WALKER ET AL., RESPONDENTS, *v.* BAMBERGER ET AL.,. APPELLANTS, AND J. R. WALKER, JR., RESPONDENT.

1. *Option—When Binding.*

   An offer to sell property, or to transfer a chose in action, with an agreement to keep the offer open until a day named, or for a reasonable time, during which the person to whom it is made may accept, will be binding if a consideration for so doing is given; otherwise it will not.

2. *Statute of Frauds—When Writing Required.*

   An agreement to sell personal property or things in action at a price not less than $200 is invalid unless the same, or some memorandum thereof, is reduced to writing and signed, or the buyer accepts and receives part of such property or the evidence of such things in action, or pay at the time part of the purchase money.

3. *Id.—Performance Takes Transaction out of Statute.*

   Where an option, not reduced to writing, on an option, is taken, and all its terms are complied with, the transactions will be taken out of the statute of frauds, and be regarded as valid.

4. *Contract—Invalid for Want of Notice.*

   A contract not brought to the notice of those holding stock in escrow until after they have delivered it in pursuance of the terms of the contract under which they hold will not be valid, even though the contract might have been valid if brought to their notice before delivery.

5. *Interpleader.*

   Where persons hold stock in escrow, to be delivered in accordance with the terms of an option, and no collusion appears, they may require the parties interested to interplead and litigate the conflicting claims between themselves.

6. *Amendments after Evidence—When Allowed.*

   Courts of equity may grant amendments to make the complaint conform to the proofs when all the parties have been permitted

to introduce their evidence on the issues as presented by the amendments, and when the court can see that no injustice could result.

(No. 913.   Decided July 9, 1898.)

Appeal from district court, Salt Lake county; Ogden Hiles, *Judge.*

Action by Walker Brothers against Simon Bamberger, W. S. Fugate, and another. From the decree rendered, defendants Bamberger and Fugate appeal. *Modified.*

*J. L. Rawlins, E. B. Critchlow* and *Brown & Henderson,* for appellants Bamberger and Fugate:

The contract claimed by Walker, Jr., is within the statute of frauds, and is void because in parol. *Grimes* v. *Van Vechten,* 20 Mich. 410; *Hinchman* v. *Lincoln,* 124 U. S. 55; *Allard* v. *Grezart,* 61 N. Y. 1; *Shindler* v. *Houston,* 1 N. Y. 261; s. c. 42 Am. Dec. note 316; 1 Benjamin on Sales, sec. 187; *Marsh* v. *Rouch,* 44 N. Y. 643-7; *Rummick* v. *Sanford,* 120 Mass. 316; *Boldey* v. *Parker,* 2 B. & C. 37.

Even a written acceptance of an oral offer not complete under the statute of frauds will not bind either party. *Washington Ice Co.* v. *Webster,* 62 Me. 341; s. c. 16 Am. Rep. 462; *Maynard* v. *Brown,* 41 Mich. 299.

To be a receipt or acceptance by the buyer, there must be an intentional delivery by the seller; something more than mere words is required. 1 Benjamin on Sales, sec. 187 (Corbin); Browne Statute of Frauds, sec. 317; *Shindler* v. *Houston,* 49 Am. Dec. note 316; *Hinchman* v. *Lincoln,* 124 U. S. 49; *Marsh* v. *Sanford,* 120 Mass. 319; *Baldey* v. *Parker,* 2 B. & C. 37.

An acceptance by the purchaser can have no effect to satisfy the statute after the vendor has disaffirmed the parol contract. 1 Benjamin on Sales, sec. 171 (Corbin).

Walker Brothers not only had authority, but were under the duty to inform themselves as to the contents of that paper. They, and all persons taking from them, had constructive notice of the terms of that document, and each was conclusively bound by them. This would be so if Walker, Jr., were a third party, in no manner connected with Walker Brothers. 2 Pom. Eq., secs. 626-628; 1 Story's Eq., 399; *Duncan* v. *Joudon*, 15 Wall. 165.

The assignment to Bamberger, and notice as aforesaid to Walker Brothers, perfected Bamberger's right to a one-half interest in the property as against all persons, but whether Walker Brothers had notice or not of the assignment, it was valid as against Walker, Jr., for the reason, (1) that he had no valid assignment of any right from Fugate, and (2) if he had anything it was a mere equity or an imperfect title, and he therefore had that title subject to all infirmities and imperfections, whether he had actual notice of them or not. 21 Am. & Eng. Enc. 567 and authorities cited. *Fairbanks* v. *Sargent*, 104 N. Y., 108-118; 2 Leading Cases in Eq., 67, 68 and 69.

*Bennett, Harkness, Howat, Bradley & Richards,* and *Dickson, Ellis & Ellis,* for respondent J. R. Walker, Jr.:

If, as in this case, an offer to sell is made partly in writing—for there can be no doubt that the instrument in writing comprises a part of the offer—and for a valuable consideration time is given within which it shall stand open for acceptance, such option is irrevocable. *Bradford* v. *Foster*, 87 Tenn. 4; *Linn* v. *McLean*, 80 Ala. 360; *Souffrain* v. *McDonald*, 27 Ind. 269; *Hermon* v. *Babcock*, 103 Ind. 461.

If no time is stated the offer will remain open a reasonable time. *Fitzpatrick* v. *Woodruff*, 96 N. Y. 565; *Stone* v. *Harmon*, 31 Minn. 512; *Larmon* v. *Jordan*, 56 Ill. 204.

It will be admitted by appellants and respondents that if an option is given for a consideration, it may be assigned before it is exercised, and the assignee may make the election, and *enforce the contract.* *House* v. *Jackson,* 32 Pac. R. 1027; *Loffin* v. *Nagle,* 9 Cal. 662; *Napier* v. *Darlington,* 70 Pa. St. 64; *Bank of Louisville* v. *Bonmuster,* 87 Ky. 6; *Butler* v. *Thompson,* 92 U. S. 412.

As we have shown, the contract between J. R. Walker, Jr., and Fugate, had two branches. One, consisting of the offer of Fugate to sell his option to J. R. Walker, Jr., upon the terms named in the writing, and the other in relation to the consideration which Walker was to give— the performance of the exploratory work, the proving up of the mine—for Fugate's leaving open the option. Upon the performance of these latter conditions by J. R. Walker, Jr., upon his giving the consideration named by the parties, and agreed upon, for Fugate's letting the offer stand open, and his tender or payment to the bank of the purchase money named in the escrow agreement, and the $150.00 to Fugate, Walker would be in a *position to enforce specific performance of the contract;* and by making the bank and Fugate parties to the suit, *could compel the delivery* of the stock, or could recover in an action at law. See 92 U. S. *supra;* see *Ide* v. *Leiser,* 10 Mont. 5; *Houghwont* v. *Boisanbin,* 18 N. J. Eq. 318; *Corson* v. *Mulvaney,* 49 Pa. 100 (88 Am. Dec. 485); *Perkins* v. *Hadsell,* 50 Ill. 216; *Hall* v. *Center,* 40 Cal. 65; *Green* v. *Richards,* 23 N. J. Eq. 32; *Fessler's Appeal,* 75 Pa. 483; *Frese* v. *Houghton,* 6 Colo. 318.

It was Bamberger's duty, if he pretended to any ownership of one-half of Fugate's option, prior to the 6th of November, to have notified Walker Brothers, plaintiffs, of his assignment and claim, otherwise a court of equity will postpone his claim, even granting he had any assignment or equitable claim, to that of any subsequent purchaser

from Fugate, who was an innocent purchaser in good faith for a valuable consideration, and who gave the notice. *In re Gillespie*, 15 Fed. Rep. 735–736; *Judson* v. *Corcoran*, 17 How. 612–615; *Hopkins* v. *Page*, 2 Brock 20–41; *Spain* v. *Hamilton's Admr.*, 1 Wall. 604; *National Bank* v. *Texas*, 20 Wall. 72–89.

As to what is a cause of action and the test of new cause, we cite: Bliss on Code Pleadings, secs. 126, 162, 428, 429; Ency. of Law, secs. 556, 564, 567; *Barnes* v. *Hekla Insur. Co.*, 9 Am. State 450; *Esch* v. *Insur. Co*, 16 Am. State 443.

There was no variance between the first cross-complaint of Walker, Jr., and the amended cross-complaint. Compiled Laws of Utah, secs. 3252, 3253, 3256.

As to the right of Walker, Jr., to amend so as to conform to the proof, and when the amendment may be made, we cite: 94 Cal. 446; 74 Cal. 191; 32 Cal. 343 and 344; *Weeds* v. *Swafford*, 75 Ia. 491; *White* v. *Lyons*, 42 Cal. 279.

*S. McDowall*, for respondents Walker Bros.:

To the effect that the action of interpleader brought by plaintiffs and respondents was a proper proceeding in such case as the one at bar, either with or without the aid of our Code, sec. 3189, Compiled Laws 1888, *supra;* see notes to *Shaw* v. *Coster*, 35 Am. Dec. pp. 695 to 712; *Schluter* v. *Harvey*, 65 Cal. 158; 11 Am. & Eng. Ency. of Law, p. 494 to 504; *Pfister* v. *Wade*, 56 Cal. 43; *Gibson* v. *Goldthwait*, 42 Am. Dec. 592; *Providence Bank* v. *Wilkinson*, 70 Am. Dec. 160; *Tyus et al.* v. *Rust*, 95 Am. Dec. 365; *Clark* v. *Mosher*, 1 Am. State 798.

ZANE, C. J.:

It appears from this record that J. C. Conklin and five others were on October 26, 1896, the several owners of

stock in the Omaha Gold-Mining Company, aggregating 179,300 shares, and on that day they entered into an agreement with defendant Fugate whereby they gave him the option to purchase the same at any time on or prior to November 28, 1896, by paying 3.65 cents per share at Walker Bros.' Bank,—the amount due the respective owners to be credited according to an agreement with Fugate; and in pursuance of their agreement they placed the same with the bank, with directions to deliver it to Fugate, or to his order, according to an agreement duly signed by them and by Fugate, as follows:

"WALKER BROS.,

   "*Gentlemen:*

Inclosed are 179,300 shares of stock in the Omaha Gold-Mining Company. If, on or before November 28, 1896, W. S. Fugate pays you, or causes to be paid for the credit of the parties mentioned below, the sum of 3 and 65–100 cents per share for all the stock herein inclosed, please deliver said stock to him or his order, and credit each party to this escrow the amount set opposite his name. If he fails to make the above-mentioned payment on or before the time mentioned, return the stock to us, as per list below."

The list consisted of the names of the respective owners, the number of shares owned by each, with the aggregate to be paid them respectively. No consideration appears for the agreement of the owners to keep their offer open until November 28, 1896, but all parties insist upon it, and we must recognize it as binding. It further appears that on November 5, 1896, Fugate and defendant Walker agreed that the latter should have a reasonable time in which to do development work on the mining claim at his own cost, to determine the quality of its ore, and to decide upon the purchase by him of the former's option. The

terms of Walker's option to purchase Fugate's option, more definitely stated, were that the former should pay the sum of 3.65 per share for all the stock mentioned in the option to the latter, and place to the credit of the owners of the stock the sums coming to them, respectively, and a further sum of $150 to Fugate, and, without cost to him, deliver to him 24,700 shares of the stock, and do the development work without delay. Thus, it appears the first option was by the owners of the stock to Fugate, and the second was by him to Walker. The latter was an option on an option.

The appellants rely upon the salute of frauds, and insist that the option given to defendant Walker was a right to accept an offer to sell him certain mining stock, or, in other words, a right to it by complying with the terms of his option. Walker's option gave him the right, on the terms of his option, to take Fugate's right to elect on the terms of his option. Fugate intended to transfer his option to Walker for the consideration mentioned in their oral contract or option. The statute embraces, as we shall see, "things in action." The right which the appellants had to elect was a thing in election, and by the election their right would become a right in action,—"a thing in action," according to the phraseology of the statute,—but not a right to a thing in possession. At the time the option to Walker was given, Fugate made the following memorandum:

"SALT LAKE CITY, Utah, Nov. 5, 1896.

"You to take up stock now in escrow in Walker Bros.' Bank, 177,000 shares, at .03 and 65-100 cents per share; take care of 24,700 shares of stock for me, and pay $150.00.

"W. S. FUGATE.

"To J. R. WALKER, Jr."

This memorandum is signed by Fugate, and it contains the name of the party to whom it was given. The escrow

or written option to Fugate, and the description and amount of the stock, and the consideration to be given by Walker are mentioned. While the names of the parties are mentioned, and, by reference to the written agreement in the bank (or the "escrow," as it is termed), the option to Fugate, and the consideration to be paid by Walker is correctly stated, so far as it goes, yet neither the agreement on the part of Fugate to keep his offer to Walker open a reasonable time, or any length of time, nor the agreement on the part of Walker to do the development work, is mentioned. Those two essential averments of the oral agreement between them are not mentioned in the memorandum. In the paper signed by appellant Fugate there is no sufficient memorandum of the option to Walker on the option given by the owners of the stock. And, if the paper signed had contained the memorandum of the oral agreement on the part of the appellant Fugate to keep the offer open a reasonable time, it would not have bound him, without a memorandum of a consideration for it. If a person offers to sell a piece of property to another, or to transfer a chose in action, and agrees to keep the offer open to a given day, or for a reasonable time, during which the person to whom it is made may accept, that is an option; and the person making the offer will be bound to keep it open if a sufficient consideration for so doing is given, but he will not be bound without such a consideration. *Litz* v. *Goosling*, (Ky. Ct. App.) 22 Lawy. Rep. Ann. 127 and note (s. c. 19 S. W. 527); *Weaver* v. *Burr*, 3 *L. R. A.* 95; *Bradford* v. *Foster*, 87 Tenn. 4. In the following cases the statute declares the agreement invalid "unless the same or some note or memorandum thereof be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received

without the writing or secondary evidence of its contents: * * * (4) An agreement for the sale of goods, chattels, or things in action, at a price not less than two hundred dollars, unless the buyer accept and receive part of such goods and chattels, or the evidences, or some of them, of such things in action, or pay at the time some part of the purchase money." Code Civ. Proc. (Comp. Laws Utah 1888) § 3918. As we have seen, the paper relied upon as a written memorandum of the oral agreement between the appellant Fugate and defendant Walker did not embrace the agreement of the former to keep his offer to sell his option open a reasonable time, or the latter's agreement to do the development work on the mining claim without delay. For these reasons the paper signed by Fugate cannot be held a memorandum of the oral agreement made by him and the defendant Walker on November 5, 1896.

Leaving the memorandum out of view, the question arises, does the evidence in the record establish a binding contract between Fugate and Walker? Before the latter was willing to accept or refuse Fugate's offer, he wished to know more about the mining claim; and, for his own information, he commenced development work on November 6, 1896, and prosecuted his investigations until the 13th day of the same month, when he became satisfied, and late in the evening of that day he notified Fugate that he had elected to accept his offer, and stated to him that he would on the morning of the next day, as soon as the bank opened, make payment to the bank as the terms of his option required, and requested Fugate to be present. While Fugate and Walker disagree as to the conversation at the time notice of the election was given, it sufficiently appears that the former wished the latter to postpone complying with his option a few days, for fear he would

have trouble with Gillespie and Holmes, two of the owners of the stock deposited with Walker Bros. He did not repudiate his agreement with defendant Walker, or notify Walker Bros. not to accept payment. He recognized the agreement with him as binding, but wanted the execution of it postponed a few days. On the morning of the next day after the election to accept Fugate's offer, Walker appeared at the bank (which means Walker Bros.), and paid to Farnsworth, its cashier, the amounts due the respective owners, according to the terms of their option to Fugate, and the same were credited by the bank to their accounts, respectively, aggregating $6,544.45, and he also paid the $150 to the bank, to be credited to Fugate's account; and the stock was delivered to Walker in pursuance of the options, and the parties to whom the credits were made were notified of the credits to their respective accounts; and two of the owners of the stock checked their credits out the same day, and three two days after that, and Fugate by December 1st of the same year had checked his $150, and the remaining owner afterwards checked his out; and Walker also notified Fugate that he held the 24,-700 shares of stock subject to his order. While the acceptance of Fugate's offer, simply, without a written agreement or memorandum, or further execution of the verbal ageeement by the defendant Walker, or the payment of any part of the consideration, would have amounted to an oral agreement within the statute of frauds, we are of the opinion that the expenditure for the development work by him, made with the knowledge and consent of Fugate, and the payment to the bank of the sums due the respective owners of the stock, and their acceptance thereof, amounted to such payment for the option to Fugate, as took the transaction out of the statute of frauds. In fact, those payments, and the payment of the $150 due

Fugate, and the notice to him that the 24,700 shares were subject to his order, and the delivery of the 179,300 shares to Walker thereafter, amounted to a complete execution of the agreement between him and Fugate, as well as the contract between him and the owners of the stock.

Appellant Bamberger also makes a claim to one-half of the stock in dispute, and insists that his right to it is superior to that of J. R. Walker, Jr. It appears that on the morning after the verbal option was made to him, on November 5, 1896, Walker told Farnsworth, an officer of Walker Bros.' bank, who had charge of the stock and the agreement under which it was deposited, that he had taken the option from Fugate; and at 1 o'clock in the afternoon he deposited the same with Farnsworth, and asked him to note the time on the envelope. It further appears that about an hour afterwards Fugate handed Farnsworth a sealed envelope, on which was written:

"WALKER BROS., City.

"*Gentlemen:*

"This envelope contains a letter in relation to an escrow for 179,300 shares of the Omaha stock in your hands, dated October 26, 1896; and, before delivering the same to any person, please open this, and consider it in connection with the escrow above named.

"Yours truly,
"W. S. FUGATE."

It appears the envelope was not opened until Walker had done the development work, and had accepted Fugate's offer, and paid to the bank the amounts due the respective owner of the stock, and until he had complied with the terms of his option, and the stock had been delivered to him. When the envelope was opened, it was found to contain the following notice:

"WALKER BROS., Salt Lake City,
        "*Gentlemen:*

"In reference to the escrow made to me on October 26, 1896, for the purchase of Omaha stock, please take notice that I have sold and conveyed a one-half interest in said escrow to Simon Bamberger.

                                "W. S. FUGATE."

We must assume, from the evidence in the record, that Mr. Bamberger knew of the terms of the option to Fugate, and of his option to Walker, and that the latter was doing development work on the mining claim. If he wished to notify Walker Bros. and J. R. Walker, Jr., of his interest in the stock, Bamberger should have done so plainly. He should not have sealed up Fugate's notice, and have simply directed the seal to be broken before delivery of the stock; for it appears it was done by Bamberger, or by his direction. We must hold that the work upon the mining claim by Walker, as the terms of his option required, and his payments when he gave notice to Fugate of his acceptance, or within less than a day thereafter, made a valid contract, notwithstanding the statute of frauds, and that it attached to the stock before the notice of defendant Bamberger's claim was made known to Walker Bros. or to him. After the delivery of the stock to Walker, Fugate and Bamberger, on the 17th. day of the same month, tendered Walker Bros. the amount J. R. Walker, Jr., had paid on it, and demanded a delivery of it to them. This tender and demand Walker Bros. refused, but in order to be relieved from litigating the adverse rights of Fugate and Bamberger and J. R. Walker, Jr., they requested a return of the stock to them; and, to accomplish that end, Walker consented, without intending further to relinquish any of his rights to the stock. In this we hold that defendant Walker lost none of the rights which he ob-

tained by the acceptance of Fugate's offer, and the execution of the terms of his option.

It is also urged that the court below erred in granting the decree requiring the defendants to interplead and litigate their conflicting claims between themselves. It appears from the allegations of the complaint and the evidence that Walker Bros. had no interest in the stock, further than to deliver it to the person or persons found to be entitled to it; and the defendants having made conflicting claims to it, and no collusion appearing, it was a proper case for such a decree.

The defendants Bamberger and Fugate also assign as error the order of the court granting the defendant J. R. Walker leave to file his amended cross complaint after the evidence had been heard. The amendment was permitted, to make the complaint conform to the proofs. The undertaking of Walker to do the development work on the mining claim without delay, and the return of the stock by J. R. Walker, Jr., to Walker Bros., after the delivery to him on November 14th, are shown by the proof, and that he did not intend thereby to surrender any of his rights by virtue of the execution of the requirements of his option were first alleged in the amended complaint. Courts of equity grant such amendments to enable causes to be decided upon the proofs, when all the parties have been permitted to introduce their evidence on the new issues presented by the amendments, and when the court can see that no injustice could result. In view of the fact that both sides rely upon the validity of the option given by the owners of the stock in dispute to Fugate, and its binding effect not being disputed, we are disposed to hold that he was authorized to make a valid transfer of it, in equity, to defendant Walker.

Other errors are assigned by cross complainants Fugate

and Bamberger, which we have considered, but we do not deem it necessary to prolong this opinion by a discussion of them. We find no reversible error in the record.

The decree of the court below is affirmed, with the following changes: J. R. Walker, Jr., shall hold for and deliver to defendant Simon Bamberger the 24,700 shares of stock decreed to Fugate in the decree appealed from. This change is made in the decree in view of the sale by Fugate of one-half of the stock in dispute to Bamberger before the institution of this suit, as it appears from the record. The case is remanded, with directions to the court below to make a change in its decree as above stated. Judgment for costs of appeal to plaintiff and J. R. Walker, Jr., against Fugate and Bamberger.

BARTCH and MINER, JJ., concur.