## L. P. McGINN, Respondent, v. INTERSTATE NATIONAL BANK, Appellant.

### Kansas City Court of Appeals, April 6, 1914.

1. INTERPLEADER: Right to the remedy. McG. sold mules belonging to H. and received a certified check which he deposited with defendant bank and received in exchange cash and cashier's checks for the amount thereof made payable at his request to McG. & Co. McG then, as McG. & Co. endorsed one of the checks to his wife without consideration. H. notified the bank not to pay the check as he was the real owner. McG. sued the bank on the check, the bank set up the facts and prayed that the claimants interplead: *Held* that it was entitled to the remedy.

2. ————: ————. In effect the bank occupied the position of what might be called a disinterested stakeholder, impartial so far as its conduct was concerned, acting in good faith and having reasonable cause for doubt as to which were entitled to the money.

3. ————: Essential Elements. The right to the equitable remedy of interpleader depends upon four essential elements. 1. The same thing, debt or duty must be claimed by all parties who are asked to be made to interplead. 2. Their adverse claims must be dependent or derived from a common source. 3. The one asking for the interpleader must not claim any interest in the subject matter. 4. He must have incurred no

independent liability to any of the claimants. The first, third and fourth are inherent in the nature of the remedy and are necessary to its proper application.

4. ———: ———. With reference to the second element above named, to-wit, the necessity for privity between the claimants or derivation of their title from a common source, it is only in cases where there is no privity whatever between the claimants, and that only where the title of one is wholly paramount to and independent of the other that the remedy is denied. And what is meant by these terms is that the conflicting claims are so wholly independent of, unrelated and antagonistic to, each other as to destroy or defeat the right by which the one asking for the interpleader holds possession of the thing in controversy.

5. ———: ———: Independent Liability. The issuance of the cashier's check was not the creation of an independent liability to one of the claimants as will defeat the right of the bank to an interpleader. There was no liability beyond the liability arising from the title to the property in controversy.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED (*with directions*).

*David Ritchie, Angevine, Cubbeson & Holt* and *Ellis & Yale* for appellant.

*C. W. Burch* and *Beardsley, Schaich & Beardsley* for respondent.

TRIMBLE, J.—This is a suit brought against the defendant bank on a cashier's check for $500 issued by defendant, payable to J. B. McGinn and Company and by it endorsed to the plaintiff. The defendant bank filed an answer and bill of interpleader setting up certain facts and praying that plaintiff and one Charles W. Hartung, be required to interplead for the amount due on said check. Plaintiff, claiming that interpleader would not lie, moved for judgment on the pleadings. The court sustained this motion and rendered judgment for plaintiff, and defendant has appealed.

The answer praying for an order of interpleader sets up the following facts:

On January 24, 1912, J. B. McGinn endorsed and delivered to the defendant bank a certified check for $1985.98 drawn by Wolcott, Beers and Grant on the First National Bank of Kansas City in favor of said J. B. McGinn. Defendant thereupon paid McGinn $485.98 in cash, and, as to the remaining $1500, at McGinn's request, it issued to him three cashier's checks for $500 each payable to the order of J. B. McGinn & Company. Two of said checks were duly paid. The third is the basis of the present suit brought by plaintiff who claims to hold said check as endorsee of J. B. McGinn. The defendant further set up that one Charles W. Hartung claims that the certified check for $1985.98 above referred to was the proceeds of mules owned by him and sold by McGinn to Wolcott, Beers & Grant, and that said certified check belonged to and was the property of said Hartung; that the $485.98 and the three cashier's checks for $500 each issued by defendant, one of which is the check in suit, were the proceeds of said certified check, and all were the property of said Hartung and were received by said McGinn in trust for his benefit, and said McGinn had no right or authority to endorse or transfer the same; that L. P. McGinn is the wife of said J. B. McGinn and that the endorsement to her of said check was made by J. B. McGinn as J. B. McGinn & Co., without consideration, and defendant further set up that said Hartung has notified defendant that he is the owner of the cashier's check on which this suit is brought, and that he will hold defendant for the amount thereof; that said Hartung further claims and has notified defendant not to pay the money called for in said check to J. B. McGinn nor to L. P. McGinn, that she is not the owner thereof and paid no consideration therefor.

Defendant further set up that it did not know whether said claims were true or not, nor whether Har-

tung or L. P. McGinn or J. B. McGinn is the owner of said cashier's check, on which the suit is brought, or the proceeds thereof; that it admits it executed the said check and owes the amount thereof to the true owner and is willing to pay same but does not know to whom payment should be made, wherefore it prays that it be allowed to pay said cashier's check into court and that said Hartung and L. P. McGinn be required to interplead, etc.

The sole question for our determination is, should defendant's prayer for an interpleader be granted? The plaintiff insists that interpleader will not lie for two reasons: 1. Because there is no privity or relation existing between Hartung and plaintiff in their opposing claims to the property. 2. Because the bank by issuing the cashier's check to J. B. McGinn has incurred an independent personal liability to one of the claimants.

The right to the equitable remedy of interpleader depends, according to early equity jurisprudence at least, upon four essential elements. As applied to this case they may be stated thus: 1. The same thing, debt or duty must be claimed by both parties who are asked to be made to interplead. 2. Their adverse claims must be dependent or derived from a common source. 3. The defendant (who is asking the interpleader here) must not claim any interest in the subject-matter. 4. The defendant must have incurred no independent liability to either of the claimants. These four essential elements are laid down by Mr. Pomeroy in his Equity Jurisprudence Vol. 4 (3 Ed.), Sec. 1322, and by many decisions.

Of the above named essential elements, the first, third and fourth are inherent in the nature of the remedy and are necessary to its proper application and use. The second, which requires that there be privity of estate, title, or contract between the claimants, or that their claims must be derived from a common

source, is not so inherently necessary to the proper administration of the remedy, and there has been a disposition to relax the rigidity of the rule in this regard, both in England and America, in later times. In 11 Am. and Eng. Ency. of Pl. and Pr. 449, 451, it is said that some authorities are exacting in the requirement that, in the absence of privity, the suit cannot be maintained, but that doctrine seems to have been abrogated in England partly by judicial decisions, and in the United States, according to high authority, the rule and its validity has been regarded as doubtful in ordinary actions of interpleader. See the remarks made in the case of Wells, etc. v. Miner, 25 Fed. 533, l. c. 538 and in the case of Crane v. McDonald, 118 N. Y. l. c. 656 where it is said "while the early authorities were exacting on this subject, many of the later cases have been less rigid, and some have ignored it altogether." And Mr. Pomeroy in a note to section 1324 of his 4th Volume on Equity Jurisprudence, in speaking of the fact that the remedy is limited to those cases where there is privity of title between the claimants, says "it is a manifest imperfection of the equity jurisdiction that it should be so limited. A person may be, and is, exposed to danger, vexation, and loss from conflicting independent claims to the same thing, as well as from claims which are dependent; and there is certainly nothing in the nature of the remedy which need prevent it from being extended to both classes of demands."

It is not necessary, however, for us to say whether the rule as to privity has been relaxed, nor are we required to base our action in this case upon any relaxation of the rule. It will be noticed that even in the statements of the law upholding the rule in all its strictness, it is only in cases where there is "no privity" between the claimants, and that only when the title one asserts is "wholly paramount" to, and "independent" of the other, that the remedy is denied.

And an examination of the cases denying the right of interpleader on this ground will disclose that what is meant is that the conflicting titles and claims are so wholly independent of, unrelated and antagonistic to, each other as to destroy, contradict, or defeat the right by which the one asking for the interpleader holds possession of the thing in controversy. For example, a tenant owing rent to his landlord cannot maintain an interpleader suit against his landlord and a stranger who claims under a title antagonistic and paramount to that of the lessor. That would, in effect, be a denial or a questioning of his landlord's title, and it would be destroying the obligation he was under to pay rent to the very one he had agreed to pay it at all events. And the reason why such a suit cannot be maintained is because, in the very nature of things, there is an independent personal liability, with respect to the subject-matter, of the tenant to his landlord, which the maintenance of the suit would destroy. But such is not the case in the suit at bar. When J. B. McGinn delivered the certified check for $1985.78 and received the cashier's check in controversy, the agreement of the bank was made on the supposition and implied understanding that he was the owner of and entitled to the possession of the money. There was no agreement on the part of the bank to pay it to him at all events. And under the allegations in the pleadings, there is no question of an innocent purchaser involved. Mrs. McGinn stands in the same situation as J. B. McGinn, no better and no worse. According to the pleadings, and in this case we must accept them as true, the certified check for $1985.78, which was the only consideration for the defendant's cashier checks, belonged to Hartung and consequently the cashier's checks and the proceeds of them belonged to him. Whether the sale of the mules by J. B. McGinn was rightful or wrongful makes no difference, since Hartung has ratified the sale by claiming the pro-

ceeds. Hartung can trace the proceeds belonging to him into the check in controversy and since the check has not come into the hands of an innocent purchaser the equitable title, at least, remains in Hartung and he. has the equitable right to pursue the funds into the hands of the bank and receive them from it. If now the bank, with knowledge that the funds belong in reality to Hartung and not to the McGinn's, pays the same out to one not the owner nor entitled to receive them, it will be in danger of being required to pay again. In 4 Pom. on Eq. Jur. (3 Ed.), Sec. 1320 it is said "where two or more persons whose titles are connected by reason of . . . being derived from a common source, claim the same thing, debt, or duty, by different or separate interests, from a third person, and he, not knowing to which of the claimants he ought of right to render the debt or duty, or to deliver the thing, fears he may be hurt by some of them, he may maintain a suit and obtain against them the remedy of interpleader."

It would seem that the bank is in the situation here indicated. It was J. B. McGinn's duty, according to the pleadings, to deliver the cashier's checks to Hartung. Instead of doing so, he wrongfully endorsed the one in suit to Mrs. McGinn without consideration. The bank is notified of this and is threatened with suit if it pays the check to the McGinns. The bank, therefore, stands ready to pay the check but does not know to whom it belongs or at least to whom the money represented by it belongs. It has done nothing wrongful. Must it be compelled to decide the controversy on its own responsibility and at its own risk? We think not. Suppose, for example, that the bank should receive money from a train robber who had stolen it, and, unaware that the money belonged to the persons or company robbed, the bank should issue cashier checks to the robber for the amount, and these checks

should be assigned by the robber to some one, without consideration, can it be said that the bank could not demand that, as it did not know the facts and the truth of the conflicting claims, the parties should interplead for it?

Under the circumstances of the case at bar, there is sufficient relation, privity, or common source of title, whatever you may choose to call it, between the two claimants to entitle the bank to ask an interpleader. At least the titles of the two claimants to the fund are not so wholly independent and distinct as to prevent the exercise of the equitable remedy of interpleader. Both claim title from the same source. Mrs. McGinn from her husband, J. B. McGinn, by endorsement and Hartung from J. B. McGinn as his agent and the duty the agent owes to pay over his principal's money. Mrs. McGinn may have the naked legal title to the check by reason of the wrongful endorsement, but Hartung is the owner of the equitable title and as Mrs. McGinn is not an innocent holder for value, according to the pleadings, the equitable title is superior to her title and both claim through the action of J. B. McGinn—Which claimant is right? Ought the bank be made to bear the responsibility of deciding?

It cannot be said that the issuance of the cashier's check was the creation of such an independent liability to one of the claimants as will defeat the right to an interpleader. The bank did not agree to pay the check at all events, but only on the implied understanding that it would do so to the one lawfully entitled thereto. The money in the bank represented by the check is claimed by Hartung as his property. The issuance of the cashier's check did not change the title thereto so long as it did not get into an innocent holder's hand. The equitable title to the check also passed to Hartung and the wrongful endorsement of it to some

one else, without consideration, did not deprive him of that title or of the right to enforce that title.

In the case of Wells Fargo & Co. v. Miner, 25 Fed. 533, l. c. 538, it was contended that because the bank had issued a certificate of deposit to one under circumstances much like the present case, the bank had entered into an independent contract and hence interpleader would not lie. The court, however, held that the issuance of the certificate did not create an independent liability. The title to the certificate was the only source of the liability and that was the very issue between the conflicting claimants. In that case the naked legal title to the certificate was in one of the claimants while only the exquitable title thereto was in the other. It will be noticed that while the case was governed by a statute of California providing that the title of the claimants need not have a common source, yet, the court intimates that without that statute it would still be one for interpleader. And on the question of the independent liability created by the issuance of the certificate the statute had no bearing, since it did not cover that element essential to an equitable interpleader.

The case of Commerce Trust Co. v. Bank of Willow Springs, 161 Mo. App. 431, is not applicable to the case here. There, clearly under the admitted facts, there was but one duty for the bank to perform, since one of the claimants, Thomas, had paid the money without imposing restrictions and, therefore, could not recall it.

Again, it will be noticed that the independent liability spoken of as defeating a right to demand an interpleader means a liability beyond the liability which arises from the title to the property in controversy. The mere fact that a contractual obligation or relation exists between the party seeking the interpleader and one of the claimants requiring its payment to such

party, will not, of itself, defeat the right of inter-
pleader. [Bechtel v. ·Sheafer, 117 Pa. 555; Love v.
Insurance Co., 144 Mo. App. 144, l. c. 154.]    The rea-
son of the rule as to independent liability defeating a
right of interpleader is that where there is such an
independent liability, a decision as to which of the
conflicting claimants was right would not absolve the
party asking for an interpleader from performing his
independent contract. He would still be liable on that,
and hence, nothing would be gained for him by an inter-
pleader. If that were allowed, he would be in the posi-
tion of compelling others, without any possible benefit
to him, to litigate a question in which he really has no
interest.    The independent liability here spoken of
means that the party asking for the interpleader must
have "bound himself by contract, so as to render him-
self liable upon such independent undertaking, *with-
out reference to his possible liability to the rival claim-
ant* upon the general nature of the entire transaction."
[4 Pom. Eq. (3 Ed.), Sec. 1326.]

The bank in this case had incurred no such inde-
pendent liability as would defeat the right to demand
an. interpleader. Under the circumstances disclosed
by the pleading it occupied the position of what might
be called a disinterested stake holder, impartial so
far as its conduct was concerned, acting in good faith
and having reasonable cause for a real doubt as to
which of the claimants were entitled to the check or the
money represented by it. It was, therefore, entitled
to have the claimants interplead. [Little v. Union
Trust Co., 197 Mo. l. c. 291.]    To hold that the bank
in this case is not entitled to have the parties inter-
plead would, in the opinion of the writer, greatly im-
pair the rights and safety with which banking opera-
tions are carried on in our present day commercial
civilization.

The judgment is reversed with directions to order

an interpleader so that it may be determined to whom the check and the money it represents rightfully belong and can be safely paid. All concur.