MICHAEL J. LEAHY, Respondent, v. LUCIUS ENGINEERING COMPANY, Appellant.

First Department, February 7, 1919.

Contract — subcontract to erect steel work — waiver of time limit — when the subcontractor not entitled to counterclaim for losses caused by contractor's failure to deliver material — waiver — continuation of work after breach of contract — refusal to complete work — loss caused by war conditions.

Where a subcontractor did not commence work under its contract until after the time limited for the completion of the work by the general contractor had expired, time for completion of the contract was waived and a new time limit could only be set by notice.

Where the subcontract required the contractor to furnish steel to be erected by the subcontractor, the latter cannot counterclaim damages for the increased cost or losses owing to the contractor's delay in furnishing the steel, where it never gave notice that unless steel was delivered by a certain time it would not proceed, but on the contrary waived the breach of contract by continuing the work, and where it also thereafter refused to perform the contract thereby forfeiting all right to damages for the contractor's defaults.

Even though the subcontractor was put at great .expense owing to the change in the value of labor and materials caused by the war, it had no legal right to demand that the terms of the contract should be modified, for a change in said prices was one of the risks of business.

Where the subcontract for the steel work merely provided for a certain payment per net ton as the work progressed and there was no segregation of prices for different items of the work, the subcontractor cannot recover the amount received by the contractor for steel delivered at the work where it had not incorporated said steel in its own work under the subcontract.

APPEAL by the defendant, Lucius Engineering Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 11th day of July, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the 2d day of July, 1918, denying defendant's motion for a new trial made upon the minutes.

*Paul Bonynge* of counsel [*Bonynge & Bonynge,* attorneys], for the appellant.

*Abram J. Rose* of counsel [*Alfred C. Petté* with him on the brief; *Kellogg & Rose,* attorneys], for the respondent.

PAGE, J.:

The plaintiff had a contract with the Interborough Rapid Transit Company for the construction of a portion of the Webster Avenue line, designated as section No. 9-B of the subway system, this portion being an elevated structure. The contract provided that time was the essence of the contract, the contractor to begin work within thirty days after notice to proceed, the entire work to be completed within twelve months after the date of such notice. It is also agreed that if the contractor shall cause any part of the work to be done by a subcontractor, the provision of the contract shall apply to such subcontractors.

The plaintiff and defendant entered into an agreement, dated January 20, 1916, whereby the defendant agreed to receive the steel at a dock and haul, unload, distribute, erect and rivet same and furnish and apply two coats of paint after the same had been erected and riveted, for a certain section of the work, the work to be done as per the specifications of the Interborough Rapid Transit Company and to its satisfaction, for the price of eight dollars and fifty cents per net ton, payments to be made monthly on the basis of ninety per cent of the work done in any one month and as the plaintiff received his pay from the Interborough Rapid Transit Company. The plaintiff also made a contract with the American Bridge Company to furnish the necessary steel, which provided that deliveries should begin in four months and be completed within ten months after receipt of plans.

Notice was given to the plaintiff on April 19, 1916, to commence work under his contract. In May, 1916, the defendant brought its plant and equipment to a storage yard convenient to the work. By reason of the non-delivery of steel, defendant was unable to commence work until the end of August, 1917. The manner in which the steel erection work was to be done was to place a derrick car upon the elevated structure, which proceeds along the structure as it progressed. This necessitated furnishing the steel in rotation. By August, 1917, sufficient steel had been received to construct three subdivisions, and the defendant set up its equipment and commenced work. It was delayed, however, by the plaintiff's failure to remove certain high voltage

First Department, February, 1919.          [Vol. 186.

electric wires that interfered with the defendant's derrick. The defendant continued to work until January 18, 1918, when it was compelled to suspend work owing to the severity of the weather, which persisted for six weeks or more. It had then erected from subdivisions 18 to 14 inclusive and two bents in subdivision 13 and had about 700 tons of steel on hand, or enough for fourteen working days. When the weather moderated in March, 1918, this situation as viewed by the defendant was then present: There was only sufficient steel on hand for about fourteen days' work, and defendant had been constantly delayed by a shortage of steel and failures to make timely deliveries to it. The country had become involved in the European War and the cost of labor and material had increased enormously. The Federal Fuel Administrator had taken charge of the coal situation and it was difficult to obtain a sufficient supply of coal to operate the machinery. Defendant had a number of interviews with plaintiff, and on March 15, 1918, wrote a letter explaining the situation, which concluded: " We therefore beg to advise you that our work in this job can proceed only on the basis of a new agreement as to prices, which will take into account the changed conditions surrounding the undertaking. In the absence of prompt advices from you indicating your willingness to negotiate a new arrangement of this character, we shall remove our equipment and look to you for the payment of our damages."

Correspondence continued between the parties until April 1, 1918, the plaintiff refusing to change the contract, and demanding that the defendant proceed under the contract and the defendant refusing to proceed. On March 26, 1918, the plaintiff notified the defendant that unless it proceeded within the next five days to carry out and perform its contract according to the terms thereof, he would treat its refusal to proceed as an abandonment and breach of the contract and would hold the defendant liable for all damages.

On April 1, 1918, the defendant wrote to the plaintiff disclaiming any liability for damages, and concluded: " This letter will serve the further purpose of advising you that in the absence of some satisfactory arrangement with you relative to the further prosecution of the work, we shall,

beginning on the 8th of the current month, remove our equipment from the job."

On April eighth this action was commenced, and defendant being a foreign corporation, its equipment was attached. The complaint is for damages for the defendant's breach of the contract. The answer denies the material allegations of the complaint and sets up a counterclaim for damages alleging the defendant's performance, except as prevented by the plaintiff, and setting forth that by reason of the failure of the plaintiff to complete the delivery of the structural steel within one year from the date of notice to commence work and the making of deliveries in illy assorted quotas and allotments, the defendant was unable to perform and complete its contract, and that in other particulars the plaintiff violated the agreement and the defendant was prevented thereby from completing and performing its contract, to its damage $35,000 occasioned by the increased expense and outlay for labor and materials.

The learned justice at Trial Term held that the defendant had broken the contract, dismissed the defendant's counterclaim and directed the jury to assess the damage of the plaintiff. The jury returned a verdict for the sum of $41,500 in plaintiff's favor. A large part of the briefs is devoted to the question whether the defendant was bound to perform the contract within the time limited in the contract between the plaintiff and the Interborough Company, a matter which, in my opinion, has nothing to do with this case. The defendant did not commence work under its contract until about four months after the time limited for the completion of the work under the plaintiff's contract, and hence compliance therewith was waived by the parties and a new time could only be limited by notice. Furthermore, I am of opinion that the defendant is not entitled to recover damages for the increased cost or losses owing to plaintiff's delay in furnishing the steel:

*First.* Because it never gave notice that unless steel was delivered by a certain time it would not proceed or otherwise put the plaintiff in default in this regard.

*Second.* By continuing to work, breaches of the contract that would have justified a termination thereof were waived.

First Department, February, 1919.          [Vol. 186.

The defendant would still have the right to sue for its damages by reason of such breaches, after due performance on its part.

*Third.* Having refused to perform the contract, the defendant lost all right to damages for the plaintiff's defaults. The defendant's abandonment of the contract was not justified. At the time it refused to proceed, there was concededly sufficient material on hand to keep the men employed for fourteen days. Other material arrived within that period which the defendant refused to receive. Performance of the contract was not impossible but only rendered more expensive.

The defendant demanded a new contract with greater compensation because of changed labor conditions and the price of materials. It, however, had no legal right to a modification of the term of the contract. A change of price either of labor or commodity is one of the risks of business. Defendant was a subcontractor. The plaintiff could not demand a change in his contract with the Interborough because of these same changes of condition, and he had the right to the advantage of his bargain with the defendant.

This is undoubtedly a hard case. The defendant, if the steel had been promptly furnished, presumably would have made a profit, in any event would not have suffered the loss that was imminent at the time it abandoned the contract. It was not responsible for the delay, and undoubtedly if by notice it had put the plaintiff in default, it could have terminated the contract, or it could have performed and recovered the damages suffered by reason of the delay.

There was one other claim of the defendant discussed in the briefs, but not within the issues raised by the pleadings, *i. e.,* that the defendant was entitled to be paid for hauling certain steel that was delivered on the work, and not yet incorporated in the structure.

The Interborough paid to the plaintiff at the rate of thirty-five dollars a ton for steel so delivered on the site of the works. Defendant claims that as to such steel it was entitled to receive the reasonable cost of hauling by virtue of the provision in its contract: " Payments to be made monthly on the basis of 90% of the work done in any one month and as you get it from the Interboro."

The difficulty with the defendant's position is that there

was no segregation of prices, so much for haulage, so much for erecting, so much for riveting and so much for painting, but eight dollars and fifty cents per ton for all these things; therefore, defendant was not entitled to be paid for haulage of steel which had not been incorporated in the work.   The plaintiff received from the Interborough payment for all steel erected, and made four payments to the defendant therefor at the rate of eight dollars and fifty cents per ton.   No claim was made by the defendant that it was entitled to any of the money received for steel delivered but not erected until January 12, 1918. The letter making this demand was marked for identification, having been properly excluded on the ground that it was not the method of payment prescribed in the contract.   (*Stewart* v. *Newbury*, 220 N. Y. 379.)

The judgment and order should be affirmed, with costs to the respondent.

CLARKE, P. J., LAUGHLIN, SHEARN and MERRELL, JJ., concurred.

Judgment and order affirmed, with costs.