[L. A. No. 8044.   In Bank.—September 29, 1928.]

SECURITY TRUST & SAVINGS BANK (a Corporation), Appellant, v. F. C. CARLSEN et al., Respondents.

Newlin & Ashburn for Appellant.

Kelby & Lawson, J. H. Sapiro, Edwin V. McKenzie and Lester R. Godward for Respondents.

Morgrage & Stanley and W. I. Gilbert for Respondent Petroleum Midway Co.

CURTIS, J.—An opinion in this proceeding was rendered by the district court of appeal, second district, second division. Thereafter we granted a motion for a hearing thereof in this court. The following portion of said opinion rendered by the district court of appeal we hereby adopt as the opinion of this court:

"This action is one in interpleader. The appeal is from an order granting a motion for nonsuit made by the defendants and respondents F. C. Carlsen and Petroleum Midway Company, also from an order denying the prayer of the plaintiff.

"The circumstances out of which this litigation arose are that on April 22, 1922, the California Chemical Company, herein referred to as the company, and F. C. Carlsen opened an escrow with the plaintiff, hereinafter referred to as the bank; at the time the parties to the escrow signed and delivered to the bank certain written instructions as to the handling of the escrow; there was then placed with it certain deposits, to-wit: (1) Written agreement between the Dominguez Land Corporation, hereinafter referred to as the corporation, and the company, by which the corporation contracted to sell certain land to the company; (2) written agreement between the company and F. C. Carlsen, in which it was agreed that the company would convey all of its interest in the instrument referred to as deposit 1, to Carlsen; and (3) written assignment by the company as stipulated in the written agreement last mentioned to be made by Carlsen.

"Deposit No. 2 provided that the consideration to be paid by Carlsen for the assignment by the company of its interest in deposit No. 1 should be $16,000. The instructions signed by Carlsen required, among other things, that the bank, escrow-holder, have delivered to it 'a letter or report by the Title Insurance & Trust Co., subject to my approval and showing that no assignment of said agreement last above mentioned appears of record, and that said Dominguez Land Corporation has not placed of record any declaration of forfeiture of or default in said agreement prior to April 22, 1922.' Further, it was provided that upon such delivery the bank should pay to the company or order $2,000, etc. There was also contained in the instructions a provision which reads as follows:

" 'No rescission of this escrow or modification of its terms or any notice or demand shall be of any effect without joint consent in writing subscribed by the undersigned and assented to by the bank.'

"Without enumerating each step taken or act done, it may be said that Carlsen appears to have performed all of the conditions agreed to be performed by him. It is so stated in a letter dated March 21, 1923, written by the bank to the First National Bank of Torrence. Nor is there any claim that the company was in default, except that the bank, acting for it, was unable to secure the report from the Title Insurance & Trust Company, required by the

312

escrow instructions. Considerable negotiations were had and finally, according to the testimony of the witness Martin, an attorney for the bank, 'Carlsen or his attorney representing him stated that they would waive these requirements.' The bank then asked the other parties to the escrow to waive them also. However, Martin testified: 'The other parties to the escrow, who were communicated with either by me or by Mr. Keyes, at my suggestion, objected to the waiver.' Upon some occasion after the escrow was begun and before suit was entered, Martin further testified, a representative of the corporation 'stated that so far as they were concerned we were at liberty to go ahead with the escrow according to the terms and conditions of it.'

"On May 15, 1922, the corporation brought suit against the company to quiet title of the former to the property involved in these transactions. It was because this suit had been filed that the bank was unable to secure from the Title Insurance & Trust Company the report required by the instructions. On June 19, 1922, the company demanded by letter that the bank close the escrow by delivering to the company the money and notes to which it was entitled under the escrow, or if that was not possible that the papers deposited by it with the bank be returned. On January 18, 1923, the corporation notified the company, Carlsen and the bank of the termination of the contract referred to herein as deposit No. 1. On March 21, 1923, the bank received notice, directed to 'F. C. Carlsen and to all whom it may concern,' declaring with reference to the agreement dated April 21, 1922: 'Whereas, the terms and conditions of said agreement have not been complied with,' a forfeiture was claimed by the company; and the letter also directed that all documents executed in connection with that agreement be returned to it.

"This suit resulted from the same disagreements of the parties in the transaction which also were the basis of the suit entitled *Carlsen* v. *Security Trust & Savings Bank, a Corporation* (L. A. No. 9560), *ante*, p. 302 [271 Pac. 104]. The escrow instructions here involved were construed in our decision upon the appeal of that case. We there held that the provision of the instructions calling for guaranty of title before the close of the escrow necessitated that the guaranty shows the title in question to be unencumbered; that

because of the provision that no modification of the terms of the escrow could be made without 'joint consent in writing subscribed by the undersigned and assented to by the bank,' oral waiver by Carlsen of the requirements concerning guaranty of title was ineffectual and hence that the bank acted within its rights in refusing his demand for delivery of the muniments of title agreed to be delivered to him under certain conditions.

"The additional question is now presented as to whether or not upon these premises of facts and of law the bank was entitled to relieve its responsibility through an action in interpleader.

"It is admitted by the respondent that if the bank were not an escrow-holder it would be entitled to the relief asked by it. It is insisted, however, that the escrow-holder is not a mere stakeholder, but has an interest in the transaction, and a legal duty to perform in connection therewith; further, that the bank can with perfect safety to itself determine which claimants are entitled to documents in controversy, and that under such circumstances it cannot require that the claimants interplead.

"We know of no decision in this jurisdiction passing upon the exact question here presented. However, although the statement is *obiter dictum,* the supreme court of New Mexico, in *Davisson* v. *Citizens' Nat. Bank,* 15 N. M. 680 [113 Pac. 598], indicated that, in the opinion of that court, an escrow-holder may secure relief from conflicting claims against the escrow through interpleader. Referring to the bank, escrow-holder in that action, it is said, 'and, when it failed to secure appellant's consent, it should have held the escrow and let the parties either come to some agreement among themselves or appeal to the courts, when the appellee could have interpleaded the money into court and secured its acquittance.' That a person holding personal property in escrow and having no interest therein may require conflicting claimants to interplead is directly held in *Walker* v. *Bamberger,* 17 Utah, 239 [54 Pac. 108].

"Section 386 of the Code of Civil Procedure provides, in part, as follows: '. . . And whenever conflicting claims are or may be made upon a person for or relating to personal property, or the performance of an obligation, or any portion thereof, such person may bring an action against the

conflicting claimants to compel them to interplead and litigate their several claims among themselves.'

■ "One objection to the right of complainant to require the defendants to interplead in this action is the claim that the bank is so interested as to exclude it from the right to maintain this action. It is important to note that during all times involved the bank was also the holder of certain bonds and evidences of indebtedness of the corporation. It is claimed by respondent that under these circumstances the interests of the bank were such that because of this fact alone any right to maintain interpleader which it might otherwise have had was defeated.

"Upon this statement of facts the interest which the bank had was not in the fund and muniments of title in dispute, but merely an interest in a legal question in that if it were determined favorably to the corporation, the latter would be a better security for the payment of its debt to the bank. Such an interest does not defeat the right to interplead. (Pomeroy, Eq. Jur., 4th ed., sec. 1325, p. 3176.) We know of no conflict of authority in the general acceptance of this rule.

■ "Another ground for denying an escrow holder the benefits of the remedy provided by this law would be, if in any case it appeared to be true, that the complainant in interpleader had assumed a definite and independent liability to one of the parties to the escrow. In *McGinn* v. *Inter-State National Bank,* 178 Mo. App. 347 [166 S. W. 345], the reason for the rule as to independent liability defeating a right of interpleader is explained to be that where such liability exists a decision as to which of the conflicting claimants was right would not absolve the party asking interpleader from performing his independent contract. However, if the relations of the parties are such that the court's decision would determine the responsibility of the escrow-holder, he is for the purposes and within the scope of the code section authorizing interpleader a mere stake-holder."

■ The only material difference between the escrow instructions in the present action and those involved in the cases of *Davisson* v. *Citizens' Nat. Bank, supra,* and *Walker* v. *Bamberger, supra,* is that there is no time limit fixed by the escrow herein in which the same should be closed, while

in the two cases just mentioned the escrow instructions provided for such a time limit. In some instances, the absence of such a time limit might have the effect of defeating the right of an escrow-holder to institute an action in interpleader and have the rights of the parties to the escrow determined by the court. But in the present controversy we do not think that this right should be withheld from the plaintiff for that reason. The contracting parties named in the escrow agreement are in hopeless discord as to their respective rights thereunder. The defendant Carlsen has served notice on the plaintiff demanding an immediate closing of the escrow and a delivery to him of the documents to which he would be entitled were the escrow closed according to its terms. The company, the other party to the escrow, on the other hand, has served notice on the bank to deliver said documents to it, claiming that Carlsen has forfeited all his rights under his agreement with the company, while the corporation, although not a party to the escrow, but a party to the agreement between it and the company, which agreement is one of the documents held by plaintiff in escrow, has served written notice upon the plaintiff, claiming that said agreement had terminated. It had already instituted suit to quiet title to the land described in said written agreement. This was the condition of the controversy when the plaintiff instituted this action of interpleader. There was no certainty and but little possibility that conditions might change for the better, and the obstacles, standing in the way of closing said escrow according to its terms, removed within any reasonable length of time. In the meantime the plaintiff might be harassed with litigation instituted by the several persons interested in the property held by it in escrow. Had it acted in the matter and delivered the documents held by it to either of the parties demanding the same it would have acted at its peril, and would have been responsible had it delivered said documents, or the money held by it, to any of the parties not entitled thereto. Under these circumstances we think the plaintiff was clearly entitled to act under the terms of section 386 of the Code of Civil Procedure.

It will be noticed that the code section expressly provides that "whenever conflicting claims are or may be made upon a person for or relating to personal property . . . such per-

son may bring an action,'' etc. We know of no rule of law, and none has been called to our attention, which requires that such a person, upon whom such conflicting claims have been made, shall await some indefinite time in the future, when possibly there may be some change in the rights of those asserting their conflicting claims, before instituting the action provided for by said section of the code, whereby he may seek a discharge from liability to all conflicting claimants. On the other hand, as we have already seen, the section of the code under consideration gives him this right, whenever such conflicting claims have been made upon him. In fact, the code section goes even further and gives this right to such person whenever conflicting claims ''may be made'' upon him.

■ The escrow instructions in the present action contained, as we have before noted, a provision as follows: ''No rescission of this escrow or modification of its terms or any notice or demand shall be of any effect without joint consent in writing subscribed by the undersigned and assented to by the bank.'' In *Carlsen* v. *Security National Bank, supra,* it was held that this provision of the escrow was for the benefit of the bank as well as the parties thereto, and could not be waived without the assent of the bank. It follows from this interpretation of the escrow instructions that the bank assumed certain obligations by virtue of the provisions of said escrow instruction. These obligations were principally to pay the money and deliver the documents deposited with it to the respective parties entitled thereto whenever all the conditions of such payment and delivery had been complied with in the manner set forth in the escrow. The fact that the bank had bound itself to perform these obligations did not necessarily prevent it from availing itself of the section of the code providing for a suit in interpleader. In general, every mere stakeholder has assumed some obligation to those interested or owning the property held by him. His obligation is to deliver the property held by him to the party entitled thereto. But when a disagreement arises as to the ownership of said property, the holder thereof has not obligated himself to settle said disagreement and deliver the property to either of said parties in the face of conflicting claims thereto. He may do so, but in case he does act, he does so at his peril, and

if he delivers the property to one not legally entitled thereto, the legal owner thereof may hold him responsible in damages for such wrongful delivery. No one questions the right of a mere stakeholder to avail himself of the relief afforded by section 386 of the Code of Civil Procedure, and to institute an action in interpleader and compel the parties claiming the property held by him to litigate in such action their respective claims thereto, notwithstanding the obligation of the stakeholder to deliver the property to the rightful owner. The bank in this action stands in no different position than that of an ordinary stakeholder. It has not assumed any obligation to settle the disputes which have arisen between the parties to the escrow, and if it should attempt to do so, and should deliver the property held by it to either of the parties not entitled thereto, the rightful owner of said property can hold the bank liable for the value of the property so wrongfully delivered. In our opinion, therefore, the provisions of the escrow agreement that no rescission or modification of its terms should take place without the consent of the parties thereto, including the bank, does not deprive the bank of its right to avail itself of the remedial provisions of section 386 of the Code of Civil Procedure.

The orders appealed from are reversed.

Shenk, J., Richards, J., Seawell, J., Langdon, J., and Waste, C. J., concurred.

PRESTON, J., Dissenting.—In substance my view is that the escrow agreement between the buyer and seller had been fully performed by the buyer Carlsen, and that inasmuch as he waived the condition respecting certificate of title to be furnished by the seller (a provision made for his own exclusive benefit) he thereby became entitled to delivery of the deed and other documents constituting the conveyance. If this position is sound, it necessarily follows that the escrow party was in law under the specific duty and obligation to make said delivery to said buyer. This obligation may not be cast upon the shoulders of another, not even the other party to the escrow. It is no concern of the other party. The conflict is between the purchaser and the escrow depositary.

Section 386 of the Code of Civil Procedure clearly does not apply to this situation. An escrow has been defined as follows: "A grant may be deposited by the grantor with a third person, to be delivered on performance of a condition, and, on delivery by the depositary, it will take effect. While in the possession of the third person, and subject to condition, it is called an escrow." (Sec. 1057, Civ. Code.) When the purchaser fully performed upon his part, according to the terms of the document, the depositary became a trustee for him. This principle was well expressed in the recent case of *Law* v. *Title Guarantee & Trust Co.*, 91 Cal. App. 621 [267 Pac. 565, 568], as follows:

"It will be observed that it is only while the instrument is subject to the conditions imposed that the deposit will be deemed to be an escrow. When the conditions upon which the deposit of the instrument have been fully performed, the relationship of the interested parties automatically changes and the depositary is then deemed to hold the instrument as a trustee for the party entitled thereto." The same principle is announced in *Feisthamel* v. *Campbell*, 55 Cal. App. 774 [205 Pac. 25]; also in *Shreeves* v. *Pearson*, 194 Cal. 699 [230 Pac. 448]. In 10 R. C. L., page 640, it is said: " . . . Upon the happening of the event or the performance of the condition upon which manual delivery should be made by the depositary to the grantee, although not in fact physically delivered to him, a deed theretofore in escrow becomes *ipso facto* the deed of the grantee in whom the title vests, and that thenceforth the depositary or holder is regarded as the mere agent or trustee of the grantee." (See, also, *Wilson* v. *Coffey*, 92 Cal. App. 343 [268 Pac. 408].)

It requires no extended citation of authority to show that the seller lost control of the documents by the deposit of them in escrow. A redelivery could not be compelled except upon failure of the purchaser to pay the purchase price specified, which is not and could not be claimed. (*Cannon* v. *Handley*, 72 Cal. 133, 139 [13 Pac. 315]; *McDonald* v. *Huff*, 77 Cal. 279, 282 [19 Pac. 499]; *Bradbury* v. *Davenport* 120 Cal. 152, 154 [52 Pac. 301]; *Trask* v. *Garza*, 51 Cal. App. 739, 743 [197 Pac. 807]; *Law* v. *Title Guarantee & Trust Co., supra.*)

Clearly the complaint in *Carlsen* v. *Security Trust & Savings Bank, supra,* stated a cause of action against the depositary for an alleged breach of duty to the plaintiff (*Law* v. *Title Guarantee & Trust Co., supra; Vinson, Jones, etc.,* v. *Pugh,* 172 N. C. 843 [90 S. E. 122]; *Collins* v. *Kares,* 46 S. D. 385 [193 N. W. 130]; *Johnston Realty etc. Co.* v. *National City Bank,* 95 Fla. 282 [116 South. 229]). Under these facts, upon what ground can it be contended that a bill of interpleader is allowable? Does there exist a defendant who would not want to shed his troubles on another by this method if it could be done? The case of *Johnston Realty etc. Co.* v. *National City Bank, supra,* is similar in facts and identical in principle with the case before us, and the court there said: "The bank seeking an interpleader has no ground for relief. It cannot cast upon the parties defendant the burden of settling the question of whether it had obligated itself to one of them. By declining to comply with its duty a situation afterwards arose which the bank now makes the occasion for its bill, but the bank had nothing to do with that controversy, even assuming that the question had been properly raised."

The other members of the court seem to base their holding almost entirely upon the wording of the escrow agreement appended to the original agreement of the parties, as follows: "No rescission of this escrow or modification of its terms or any notice or demand shall be of any effect without joint consent in writing, subscribed by the undersigned, and assented to by the bank." It is said that the seller wrote into that provision indemnity against his own failure to perform. I cannot attribute this weakness to it. Extended discussion would weaken and not clarify the answer to such a contention. Did the parties contract or was the seller guilty of a sham? In the first place, he only agreed to transfer all of his right, title, and interest, the legal equivalent of a quitclaim deed. Shall it be held that he did even less than this by ruling that he was always protected against any covenant on his own part? It seems self-evident that the contract should not be held to have been merely an idle act.

Importance also may have been attached to the provision that the bank should assent to any modification of the terms of the escrow. It seems too clear for argument that under

said clause it is not a change or modification of the escrow for one party to waive a provision expressly intended for his sole benefit. In 13 C. J., p. 672, the law in this respect is stated as follows: ''In general proof of the waiver of performance' by the party who is entitled to insist on performance is tantamount to a performance. . . . A mere waiver of a condition in the contract does not amount to the substitution of a new contract. On the contrary, waiver of performance of a contract or extension of the time therefor, in the case of a condition precedent, is equivalent to the performance thereof at the stipulated time and leaves the original contract intact." (See, also, *Barton* v. *Gray*, 57 Mich. 622 [24 N. W. 638]; *Leahy* v. *Lucius Engineering Co.*, 186 App. Div. 354 [174 N. Y. Supp. 310].)

It is my view that the petition for rehearing in this case should have been granted.

Rehearing in Bank denied.

Seawell, J., and Preston, J., dissented.