## McDEVITT v. SULLIVAN.

A tenant may show that his landlord's title has terminated, or that his attornment was made under mistake of fact, or by fraud.

Where the owner of mortgaged premises leases the same for a term of years, and the rent is paid in advance by the tenant: *Held*, that the purchaser, under the mortgage-sale, can require the tenant to pay the rent over again to him.

After sale, and before the term of redemption has expired, the purchaser is entitled to collect the rents.

Where a tenant finds that there are adverse claimants to the property, he should file a bill of interpleader, making all the adverse claimants parties thereto, and offer to pay the rents into Court, to abide the ultimate decision of the case.

APPEAL from the District Court of the Fourth Judicial District.

In November, 1847, Charles Dorente died, seized in fee of lot

McDevitt v. Sullivan.

No. 196, in the city of San Francisco, leaving a widow and two infant heirs, Albert Dorente and Augustus Dorente. In June, 1849, the widow intermarried with J. Hawes Davis; and in August, 1853, Davis and wife mortgaged an undivided interest of the lot to A. A. Cohen. On the first of December, 1854, Davis, in his own name, leased a portion of the lot to the defendant for the term of six years. The mortgage was foreclosed, and the lot sold by the sheriff, and purchased by Abel Guy, on the twenty-first of June, 1855. The suit to foreclose the mortgage, was commenced April 20, 1855. On the seventeenth of March, 1855, McDevitt brought a suit against Davis for grading the lot, and recovered judgment, under which the interest of Davis in the premises, held by defendant, was sold by the sheriff and purchased by defendant on the sixteenth of July, 1855. On the ninth of August, 1855, the defendant assigned the sheriff's certificate of sale to the plaintiff. In the assignment, which was endorsed upon the certificate of sale, the defendant "agreed to hold the premises of McDevitt, subject to the same terms and conditions upon which the defendant previously held them, under the lease from Davis during the unexpired term."

On the twenty-ninth of August, 1855, the two heirs of Dorente instituted a suit in partition for a division of the lot, in which Davis and wife, and Abel Guy, were made parties. In December, 1855, the District Court made a decree of partition, under which the premises occupied by defendant, Sullivan, were set apart to Albert Dorente. Albert Dorente, by his guardian, brought suit in the District Court against Sullivan, in 1856, for the rent of the premises accruing after the month of January, 1856, and obtained judgment against Sullivan by default. Sullivan applied to the Court to set aside the default, which was denied, and Sullivan appealed to this Court, where the judgment was affirmed. After the assignment of the certificate of sale by Sullivan to McDevitt, the former paid several months' rent to the latter. It appears that McDevitt paid Sullivan nothing for the assignment, but credited the judgment against Davis, with the amount bid by Sullivan. Sullivan having refused to pay any more rent to McDevitt, this suit was brought to recover thirteen months' rent, from January 1, 1856, to February 1, 1857, inclusive. Upon the trial in the Court below, the defendant had judgment, and the plaintiff appealed.

*E. Bartlett* for Appellant.

It matters not what title the appellant may have, so long as the respondent, pursuant to his lease, held and enjoyed the premises from the appellant, and neither can it be shown, either before or after the lease, that the appellant's title was not good, for in no case can he be permitted to attack the title of his landlord. All the tenant can be allowed to show, is that the

landlord has parted with his interest, since the making of the lease; not that it was not good, but that the landlord's interest has determined, either by his own act, or by some act of law to which he is a party, and this lease to the consideration of another portion of the evidence, embraced within the first exception, and that is the record of the partition-suit. It will be seen, from the statement, that the partition-suit was commenced twenty days after the respondent became the tenant of the appellant, that is, the twenty-ninth of August, 1855, consequently, he can only be bound by it, by being made a party in the suit, and which it is admitted he was not. The record therefore could not be evidence to affect the appellant's title. 1 Henry & Mumford's Va. R., 345; 1 Breckenbridge, C. C. R., 23; 9 Peters, 8; 4 Wheaton, 213; 4 Cond. R., 426; 2 Galli. C. C. R., 565. At the time of bringing of the partition-suit, Davis had at most only an equity of redemption in the premises, and out of possession, and the decree could only affect that interest, so that to whatever person it may have been transferred, he could take no greater interest than Davis himself had. If, therefore, the equity of redemption passed to Albert Dorente, by virtue of the decree in partition, then, to show a determination of the appellant's estate, it was necessary for the respondent to show that Dorente had redeemed, which it is not claimed.

It is not law to require that the appellant should show that the party holding Davis' equity of redemption, has not redeemed by producing the sheriff's deed. This is not only requiring the appellant to establish a negative, but it is also in violation of the principle, in effect, for which we have been contending; that is, that the tenant cannot dispute his landlord's title, because if this, as a proposition of law, is true, it must be equally true that the landlord, in an action for rent, cannot show his title. The burden of proof was upon the respondent, to show the determination of the landlord's estate, by showing that Dorente had redeemed.

The counsel for the respondent will endeavor, upon the argument, to make a point upon what he considers as a mistake of fact existing between the parties, at the time of making the lease of the ninth of August, which renders it void. What is claimed as constituting this mistake of fact, is this: That at the time of the sale on execution, on the sixteenth of July, and the sale and lease on the ninth of August, both took place under the supposition, by the parties, that Davis was the owner of the premises, and that they did not know of the sale on foreclosure on the sixteenth of June. It will be seen that this question cannot be gone into without necessarily bringing up the question of title, as the decree of foreclosure necessarily affects the title, and therefore comes within the first exception. But even if it could, it would not show what amounts to a mutual mistake of facts,

for if this sale took place under foreclosure, Davis still had his equity of redemption, and the possession.

This sale was a matter of public record, and both had the means of knowing it if it was so. Potter *v.* Everett, 2 Hall N. Y. R., 252; 9 Cowen., 674; 1 Wend., 355; 3 Wend., 412.

*C. M. Brosnan* for Respondent.

The defendant insists:

1. That it is competent for him to show that Davis had no interest in the land, and, of course, that McDevitt acquired no interest under the judgment and sale of Davis' interest; and hence, that there was no consideration for the agreement of Sullivan, to pay rent to McDevitt.

2. Sullivan having acquired possession in 1854, under his lease, and that possession continuing to the present, he is at liberty to dispute the claim of McDevitt, not having first acquired possession through him.

3. The attornment to McDevitt was void, and without consideration, as nothing passed under the sale; and was made under a mutual mistake.

4. The Court below should have given judgment for the defendant, Sullivan, for the money which he paid to McDevitt under that mistake, and void agreement. Dorente, the owner of the land, is alone entitled to the rent, and he has already recovered judgment for it, which Sullivan has paid.

The following cases are directly in point, to show that the defendant is not estopped, and that rent cannot be recovered upon a void lease, or where the party has no interest: 8 B. & C., 471; 15 Eng. C. L., 234; Chitty on Contracts, 295, 296; 6 Taunton, 202; 11 Vermont, 323, and note; 1 Bing., 38; 6 Tenn. R., 682.

And these show that he is entitled to judgment for the money paid by him to McDevitt. 3 Denio, 130; 20 Wend., 174, mutual mistake; 10 B. & C., 234; 21 Eng. C. L., 106; 9 Mass., 408; 1 Brod. & Bing., 289.

BURNETT, J., delivered the opinion of the Court—FIELD, J., concurring.

1. The premises being mortgaged at the date of the lease from Davis to Sullivan, in December, 1854, Sullivan took the lease, subject to the mortgage. When the mortgage was foreclosed, and the premises sold to Abel Guy, the mortgaged estate of Davis and wife passed to Guy. From the time that the estate vested in Guy, he acquired the right to demand of Sullivan, either the possession of the estate purchased under the mortgage-sale, or a proportionate part of the rent. In a suit by McDevitt against Sullivan, the latter had the right to show that a part of the interest of Davis had passed, and that his estate thus far had ceased. So far as McDevitt claimed *as the successor*

of Davis, he was only entitled to the rents that Davis would have claimed at the time of the purchase and assignment by Sullivan.  Previous to that purchase, the interest mortgaged by Davis and wife had passed to Guy, leaving in Davis only that portion not covered by the mortgage.  Although, as a general rule, a tenant cannot dispute his landlord's title, he may show that it has terminated.  Chitty on Contracts, p. 296–7.

2.  But it is insisted, by the learned counsel for the plaintiff, that Sullivan entered into a lease of the premises with McDevitt and paid him rent ; and that Sullivan is, therefore, estopped from denying his landlord's title.  This ground does not seem to be tenable under the peculiar circumstances of this case.  Sullivan did not obtain possession under McDevitt, and he is not estopped from showing that the attornment to McDevitt was made under a mistake of fact.  The lease made by Sullivan with McDevitt, and the payment of rent, constitute only *prima facie* evidence of title in McDevitt.  The proof being only *prima facie*, was fully overcome by the facts established in evidence.  There can be no doubt of the fact that Sullivan purchased the premises for the benefit of McDevitt, and the assignment of the certificate of the sheriff, was simply to carry out.the understanding between them.  It was, therefore, a mistake on the part of Sullivan in agreeing to pay to McDevitt the *entire rent,* including the portion that rightfully belonged to Abel Guy.  Chitty on Contracts, 296–8; 15 E. C. L., 234; Taun., 201; 11 Ver., 323 ; 1 Bing., 390.

So far, then, as to the individual interest covered by the mortgage, Sullivan had the right to show that he owed the rent to another, and not to McDevitt.

3.  But as to that portion of the interest not covered by the mortgage, the case presents a very different question.  It is true, that under the authorities before cited, the execution of the assignment, and the payment of the rent, would not estop Sullivan from disputing the title of McDevitt.  But how far will this right permit Sullivan to go?  Under this privilege, can he show, contrary to his lease to Davis, that Davis *never* had any title ?  And if he could not be permitted to show this, *as against Davis,* (had Davis, instead of McDevitt, brought this suit *before* the partition,) could he be permitted to show it as against McDevitt, the regular successor in interest of Davis?  McDevitt claims the rent, not only in virtue of the *lease,* but in virtue of the *purchase.*  He claims upon two distinct grounds.  By taking the lease from Davis, and entering into possession under him, Sullivan is not permitted to deny the *original* title of Davis, unless he had set up and shown fraud in obtaining the lease, or that the premises had been decided, by a competent Court, to belong to another, in a suit in which his landlord had been made a party *before* his interest passed to McDevitt, or that McDevitt, *after* his interest

accrued, had been a party to such suit.  The proceedings in the partition-suit did not affect McDevitt, as he was no party to them, and he had succeeded to the interest of Davis in the lease *before* Davis was made a party.  It is true, the right to redeem remained in Davis at the date of the judgment in the partition-suit.  But if any redemption was in fact made, the party claiming the benefit of the redemption should have proven that fact. Before the time for redemption expired, the purchaser was entitled to collect the rents.  Reynolds *v.* Lathrop, January Term, 1857.  And after the time expired, he would have the same right.  The *certificate* of the sheriff did not convey the legal title of Davis to McDevitt, but it was equivalent to an assignment of the lease.  The certificate, under the provisions of our statute, was an executory agreement to convey the *title* to the *land after* the expiration of the time limited for redemption, and in default of such redemption, while it was a present assignment of the lease itself.  As to the proceedings in the suit of Albert Dorente against Sullivan, for the rent, they cannot affect McDevitt, because he was not made a party, and because the judgment was by default, and not upon the merits.  Because Sullivan permitted Albert Dorente to take judgment against him by default, it was no reason that such a judgment should bind any one but the parties to it.

But even conceding such judgment had been upon the merits, it could not bind McDevitt, who was no party to the suit.  The moment Sullivan discovered that there were adverse claims to the rents, he should have filed his bill of interpleader, making all adverse claimants parties, and offering to pay the rents into Court, to abide the ultimate decision as to the party entitled to them.  When a party rents property of another, and he learns afterwards that the title of his landlord is disputed, he may at once proceed in the proper mode to settle the question.  If he fail to do this, he cannot dispute the title, except in the cases stated, where the title of his landlord has ceased, or when the lease was obtained by fraud.  As Sullivan did not obtain possession under McDevitt, he might well show any fact that would prove that the right of Davis in the lease, in whole or in part, did not *pass to McDevitt;* but he could not dispute the *original* title of Davis, or his original right to make the lease in his own name, *except* in the cases stated.  Conceding the right of Davis as against Sullivan, and conceding that it passed to McDevitt, the proceedings in the last two suits mentioned can have no effect upon McDevitt's rights, and they stand as if those suits had never been brought.

There was, then, before the Court, no competent testimony to show that Davis had no title as against the tenant at the time of the purchase and assignment by Sullivan, except as to that portion of Davis' interest covered by the mortgage.  It may be

39

unfortunate for Sullivan to be forced to pay the rents twice, but we can only decide upon the facts parties bring up before us.

Our conclusion is, that McDevitt is entitled to judgment for that portion of the rents that did not pass to Abel Guy; and that Sullivan is entitled to a credit for the over-payments made to McDevitt before the suit was brought. Guy being entitled to a certain portion of the rent from the date of his purchase, McDevitt had no right to receive the entire rent, including the portion due to Guy. And for that excess in the payment, Sullivan has a right to a credit. 10 B. & C., 106.

The judgment of the Court below is reversed, the cause remanded, and that Court will render judgment for the plaintiff, in accordance with this opinion.