[L. A. No. 18087. In Bank. July 13, 1944.]

HANCOCK OIL COMPANY OF CALIFORNIA (a Corporation) et al., Appellants, v. W. L. HOPKINS et al., Respondents.

Pease & Dolley for Appellants.

Schauer, Ryon & McMahon and Robert W. McIntyre for Respondents.

EDMONDS, J.—Two corporations, lessees of certain real property, demand that the lessors and certain other persons interplead their rights to the landowner's oil royalties accrued and to accrue under the terms of the lease. A general and also a special demurrer, interposed by some of those against whom interpleader is sought, were sustained without leave to amend, and the question for decision concerns the right of a tenant to maintain such a suit against his landlord and a stranger to the lease.

According to the complaint, in 1936 W. L. Hopkins and Gertrude Ann Hopkins, his wife, leased certain real property to Hancock Oil Company of California and R. R. Bush Oil Company. Landowner's royalties of approximately $1,500. have accrued. It is also alleged that in 1941, Independent Distributing Co., a copartnership composed of Merritt Bloxom, Eugene E. Olwell and Murray M. Olwell, brought an action asserting that W. L. Hopkins, Gertrude Ann Hopkins, and two persons sued by fictitious names, hold the real property described in the lease in trust for them. The relief sought in the suit of Independent Distributing Co. was an accounting of the rents of the land.

The copartnership and the copartners, together with W. L. Hopkins and Gertrude Ann Hopkins, H. James Hopkins and W. L. Hopkins, trustees of Wilbur T. Hopkins Trust, and H. James Hopkins and W. L. Hopkins, trustees of the H. James Hopkins Trust, are named as the defendants in the present suit, the charge of the complaint being that the copartnership and the copartners claim to be the owners of the land described in the lease and entitled to all of the landowner's royalties accrued and to accrue under that agreement. A further assertion of the complaint is that the defendants other than the copartnership and the copartners also claim the same royalties and by reason of these conflicting claims the lessees cannot safely determine to whom the rent should be paid. In conclusion, the plaintiffs declare that the suit was not commenced in collusion with any of the defendants.

To this complaint Merritt Bloxom, Eugene E. Olwell, Murray M. Olwell and Independent Distributing Co. filed an answer alleging that they are the owners of the property and entitled to all of the rents and profits from it. They also assert that the defendants named Hopkins are holding title to the property in trust for them. The defendants other than the copartners and the copartnership interposed a general demurrer and a special demurrer upon the ground of uncertainty. Each demurrer was sustained without leave to amend and the corporations' appeal is from the judgment which followed that order.

From an opinion of the trial judge, it appears that the demurrers were sustained upon the sole ground that a tenant may not question the title of his landlord at the date of the lease; accordingly, a suit by a tenant to interplead his landlord and one who claims the rent agreed to be paid in accordance with the terms of the lease by which he holds possession of the real property is in violation of this fundamental principle. The appellants assert that a suit in interpleader does not constitute a denial of the landlord's title but is simply a means by which the tenant may discharge his obligation to pay rent under the lease without becoming involved in the conflict between different claimants to the amount due and unpaid. They take the position that section 386 of the Code of Civil Procedure, as amended in 1881, abrogates the common law rule and so liberalizes the remedy as to permit a tenant to interplead his landlord and a stranger to the lease where both claim the rent.

The respondents, in defending the judgment in their favor, argue that the rights of the parties are governed by the common law rule prohibiting a tenant from interpleading his landlord with a stranger to the lease where their titles or claims are not in privity. They point out that a denial of the remedy under such circumstances is based upon the statute declaratory of the common law that "A tenant is not permitted to deny the title of his landlord at the time of the commencement of the relation." (Code Civ. Proc., § 1962(4).) They also insist that the common law rules governing interpleader are still in effect notwithstanding the provisions of section 386 of the Code of Civil Procedure.

The common law bill of interpleader had four essential elements: (1) The same thing, debt, or duty must be

claimed by both or all the parties against whom the relief is demanded; (2) all of the adverse titles or claims must be dependent, or be derived from a common source; (3) the one seeking the relief must not have nor claim any interest in the subject matter; and (4) he must have incurred no independent liability to either of the claimants. (See 4 Pomeroy's Equity Jurisprudence [5th ed. 1941] § 1322, p. 906.)

█ These requirements have been termed historical limitations upon this otherwise expeditious equitable proceeding (see comment, 29 Cal.L.Rev. 35, 36, and 41; 4 Pomeroy's Equity Jurisprudence [5th ed. 1941] § 1324, footnote p. 910), and in 1881 section 386 of the Code of Civil Procedure was amended to broaden the remedy. The statute, as modified to remove in part the artificial restrictions which have kept interpleader within technical and narrow bounds, declares, insofar as is here pertinent: "And whenever conflicting claims are or may be made upon a person for or relating to personal property, or the performance of an obligation, or any portion thereof, such person may bring an action against the conflicting claimants to compel them to interplead and litigate their several claims among themselves. The order of substitution may be made and the action of interpleader may be maintained, and the applicant or plaintiff be discharged from liability to all or any of the conflicting claimants, although their titles or claims have not a common origin, or are not identical, but are adverse to and independent of one another." The provision of this enactment, that interpleader lies "although their titles or claims have not a common origin . . . but are adverse to and independent of one another," directly abrogates the common law requirement that all the adverse titles or claims must be dependent or be derived from a common source, and it is therefore clear that privity between the conflicting claimants need not be shown to invoke the remedy under the code. █ But the effect of the amendment upon the common law requirement concerning the thing, debt or duty which is the subject of the complaint in interpleader is clearly seen only when the statute is considered in connection with the purpose and policy of the remedy.

Early in the history of interpleader, it was held that one who sought to maintain such a suit must show outstanding claims, identical in every respect and without the slightest

degree of variation, to the same thing, debt or duty. In the case of conflicting claims to specific personal property, this rigid formalism did not seriously interfere with the effectiveness of the proceeding. But where, as is generally the situation modernly, the subject matter of the conflicting claims was an obligation, a debt or a duty, the requirement as to the identity of the defendant's demands very often prevented a stakeholder from using interpleader where he was doubly vexed with respect to one liability. For example, under the narrow rule of the common law, if one person claimed all of the fund held by a bank and another person asserted the right to only a portion of that fund, the bank could not secure a determination of its liability by means of the equitable proceeding. The Legislature has removed this restriction, yet the very rationale of interpleader compels the conclusion that the amendment does not allow the remedy where each of the claimants asserts the right to a different debt, claim or duty. If the conflicting claims are mutually exclusive, interpleader cannot be maintained, but the fact that an identical right is not asserted by each of the claimants does not preclude the use of the remedy. This was recognized in *Sullivan* v. *Lusk*, 7 Cal.App. 186 [94 P. 91, 92], where, under authority of the statute, a trustee was permitted to interplead two attorneys, one of whom claimed one-half of the amount allowed by the court as counsel fees and the other asserted a right to the entire sum.

In the present case, the plaintiffs have alleged that each of the two groups against whom interpleader is sought claims the right to receive the rents and royalties reserved in the lease. If Independent Distributing Co. and the members of that copartnership should assert that they are entitled to the reasonable value of the use and occupation of the land leased to the plaintiffs, together with the mesne profits or damages for waste, the trial court would be required to deny the plaintiffs the right to interplead those parties with their lessors. Under such circumstances the claims of the parties would not relate to the same obligation. But as the appellants' complaint pleads that there are conflicting claims concerning the obligation to pay the rents and royalties reserved by the lease, the lessors and the third parties must answer and, if each of them agrees that his claim concerns the right to those rents and royalties, the lessees

should be discharged from liability upon payment of the amount which has accrued.

As to the remaining common law principles governing a suit of interpleader, the appellants' complaint conforms to the requirement that the plaintiff in such a proceeding must stand in the position of a disinterested stakeholder. However, much of the present controversy centers about the last element which is specified as essential. Although the complaint discloses no obligation of the appellants other than under the lease, the respondents assert that the obligation to pay rent constitutes an independent liability and bars the remedy of interpleader.

Yet not every obligation may be correctly characterized as an independent liability which will defeat the right to interpleader. The rule concerning independent liability is stated in Corpus Juris as follows: ''Interpleader will not lie if the stakeholder has incurred some personal obligation to either of the claimants, independent of the title or the right to possession, because such claimant would in that event have a claim against him which could not be settled in a litigation with the other claimant.'' (33 C.J. 439.) The editors of American Jurisprudence are in accord with this statement. (30 Am.Jur. 221.) The Supreme Court of Maine put the matter most convincingly when it said: ''The mere fact that a contractual relation exists between plaintiff and one of the defendants, under which the fund is required to be paid to such claimant, does not of itself defeat the right of interpleader. (*Love* v. *Hartford Life Ins. Co.,* 153 Mo.App. 144, 132 S.W. 335.) If such were the law, it would be difficult to conceive of any set of facts which would enable a bank, a trustee, or other custodian of funds, or even a bailee, to maintain interpleader. The obligation referred to in the rule must be independent of the title or right of possession of the fund or property in question. . . . 'The independent obligation covered by the rule must be such that the litigation between the defendants will not determine it, in order to warrant dismissal of the bill.' (*Byers* v. *Sansom-Thayer Commission Co.,* 111 Ill.App. [575] 580.)'' (*First National Bank* v. *Reynolds,* 127 Me. 340 [143 A. 266, 60 A.L.R. 712].) The same reasoning has been followed by this court in holding that an escrow-holder may maintain a suit in interpleader. The determining factor was said to be that ''if the relations

of the parties are such that the court's decision would determine the responsibility of the escrow-holder, he is for the purposes and within the scope of the code section authorizing interpleader a mere stake -holder." (*Security Trust etc. Bank* v. *Carlsen,* 205 Cal. 309 [271 P. 100, 410, 60 A.L.R. 630].)

Although Professor Pomeroy declares that an independent liability "arises from the very nature of the original relation subsisting between" the landlord and tenant, he states that such a suit is proper whenever there is some privity between the claimant and the lessor, as, for example, when the relation of trustee and *cestui que trust* has been created between them. It seems, therefore, that the reason why the author asserts that the relationship of the landlord and tenant precludes interpleader by the tenant is not that, under the lease, there is an independent liability but because there is no privity between the landlord and the one joined with him as a defendant. The cases cited in the text support this conclusion, for in each of them the court based its decision as to whether interpleader was the proper remedy upon a consideration of the respective claims with regard to their derivation or common origin.

From what has been said, then, it is clear that, in the present case, as according to the facts alleged in the complaint, the relations *inter se* of the respondents and the copartners are such that the decision will determine the liability of the lessees to each of them, there is no independent liability which will bar the remedy of interpleader; accordingly the appellants' complaint is sufficient with respect to those of the four common law requirements for interpleader not abolished or modified by the amendment in 1881 to section 386 of the Code of Civil Procedure. But notwithstanding this fact, say the respondents, the remedy is not a proper one under the circumstances here shown because of the rule of the common law, now embodied in the Code of Civil Procedure (§ 1962, subd. 4), that a tenant may not dispute the title of his landlord at the time of the commencement of the relation.

The common law doctrine is generally justified upon the ground that to allow the remedy under such circumstances would amount to a violation of the ancient doctrine of attornment. (97 A.L.R. 998; 30 Am.Jur. 216.) Historically, the rule arose in actions wherein the landlord sued the

tenant for rent. It is based upon estoppel and also the conclusion that to permit a tenant to defend against the person who put him in possession, upon the ground that the latter had no title or that another had a paramount title, would be against public policy. (See 15 Cal.Jur. 645, 646; 32 Am.Jur. 108.) ▉ But as an exception to it, courts permit a tenant to interplead his landlord and another where the opposing claimant derived his title from the landlord after the commencement of the relation. In such a situation, it is said, since the defendants are in privity, the tenant is not in the position of denying his landlord's title. (*Maulsby* v. *Scarborough*, 179 Md. 67 [16 A.2d 897]; 4 Pomeroy's Equity Jurisprudence [5th ed. 1941], § 1327.)

In the present case, had the appellants alleged that the copartnership and the copartners derived title from the lessors after the execution of the lease, the complaint would have been sufficient as against a demurrer upon the ground of the common law rule. However, since the complaint is not certain in this respect, and from the briefs it appears that the copartnership and the copartners claim to be the beneficiaries of a constructive trust, it is necessary to determine whether section 1962(4) of the Code of Civil Procedure prevents interpleader where privity is lacking or it arose prior to the commencement of the relation. The point has not been directly adjudicated in California, but this court has considered some aspects of the problem.

In *McDevitt* v. *Sullivan* (1857), 8 Cal. 592, 597, an action for rent by a plaintiff standing in the lessor's shoes, the court mentioned by way of dictum, ''The moment Sullivan [tenant] discovered that there were adverse claims to the rents, he should have filed his bill of interpleader, making all adverse claimants parties, and offering to pay the rents into Court, to bide the ultimate decision as to the party entitled to them.'' This case was decided before the important amendment in 1881 to section 386 of the Code of Civil Procedure. *Schluter* v. *Harvey* (1884), 65 Cal. 158 [3 P. 659], held that where, after execution of the lease, the original landlord had assigned the rents to Baumgarten and conveyed the land to Harvey, the tenant could interplead both claimants to his obligation for rent, hence there was no issue as to whether an interpleader action violates the rule that a tenant may

not deny his landlord's title. The case of *Warnock* v. *Harlow* (1892), 96 Cal. 298 [31 P. 166, 31 Am.St.Rep. 209], is not helpful. There a tenant interpleaded his landlord and a stranger to the lease, but his right to do so was not questioned and the court did not pass upon the propriety of the remedy. In *Spangler* v. *Spangler* (1909), 11 Cal.App. 321 [104 P. 995], the court considered a controversy concerning rights under a lease and observed that the lessee, who was then being sued for possession of the property, was the plaintiff in another suit. In commenting upon this situation, it was said: "Conflicting claims having been made on the defendant for the rent, he had a right to require . . . [his lessor and her grantee under a conveyance executed subsequent to the lease] to interplead."

Notwithstanding the strict common law limitation on interpleader in landlord-tenant cases which is justified by an ancient rule of real property, the code provision concerning the remedy must be liberally construed. A remedial statute, its purpose is to avoid a multiplicity of suits and prevent vexatious litigation. And contrary to the rule of the common law requiring that statutes in derogation of it are to be strictly construed, in this state such an enactment is to be interpreted "with a view to effect its objects and to promote justice." (Code Civ. Proc., § 4.) Not inappropriate in this connection is the comment of the District Court of Appeal upon section 386 in its present form. The court said: "In view of such technical rules as prevail in other jurisdictions (30 Am.Jur. 218) the weight of authority is not persuasive, for 'the conditions under which the remedy may be invoked in this state are prescribed by statute and [the] scope of the remedy has been broadened and enlarged.'" (*Williams* v. *Gilmore*, 51 Cal.App.2d 684, 688 [125 P.2d 539].)

It should also be noted that section 1962, subdivision 4, of the Code of Civil Procedure was in effect when the Legislature, by the amendment of section 386, broadened the remedy of interpleader. From that action an intention may be implied to do away with any limitation upon a tenant as a plaintiff in such litigation by reason of the statute prohibiting him from denying the title of his landlord.

Another reasonable conclusion is that as, notwithstanding the rule codified in section 1962(4), the common law permitted a tenant to interplead his landlord and a stranger in

privity, when the Legislature abolished the requirement of privity in interpleader cases, it did away with the basis for the common law rule. ▮▮▮ Moreover, it is questionable whether a tenant, by interpleading his landlord and another, directly and absolutely disputes the former's title. At most, the tenant admits his landlord's title but asserts that another claims his obligation for rent. Clearly, the tenant must not deny his landlord's title for, otherwise, he would not be a disinterested stakeholder.

Interpleader is allowed in favor of a bank against rival claimants to a bank deposit (*Conner* v. *Bank of Bakersfield* (1920), 183 Cal. 199 [190 P. 801]; *Wells, Fargo & Co.* v. *Miner*, 25 F. 533; and see 60 A.L.R. 719), or of an insurer against such claimants to the proceeds of an insurance policy (*Mutual Life Ins. Co.* v. *Henes* (1935), 8 Cal.App.2d 306 [47 P.2d 513]). Upon principle as, for the reasons which have been stated, the code section forbidding denial of a landlord's title does not apply to a suit of interpleader, there is no basis for any distinction between the position of a bank or an insurance company facing rival claims to a fund and a tenant from whom rent is demanded by two or more persons.

▮▮▮ And with general judicial recognition of the right to maintain interpleader against persons in privity, little force is left in the argument grounded upon public policy. From that standpoint, a tenant would be in no better position when meeting the claim of the grantee of a forged deed dated after the commencement of his lease and the demand of one asserting that since a time before the lease was made he has been the owner of the demised property. Without question the rule of privity would allow interpleader against the forged deed claimant. To deny the tenant its benefit in opposing the asserted rights of the person claiming under a title which is described as being derived from one not the lessor, or from the lessor at a date prior to that of the lease, would deprive him of the only effective method of protecting his interests. For in the absence of the right to interplead the landlord and the adverse claimant to the rent, the tenant is faced with the unfortunate alternative of forfeiting his lease or possibly paying twice. (*Perkins* v. *Benguet Cons. Min. Co.*, 55 Cal.App.2d 720 [132 P.2d 70].) And there is no action at law adequate to shield him from vexation by

multiple litigation over the obligation for rent, against the risk of double liability upon the same obligation, and against insecurity of tenancy.

Furthermore, interpleader is not only of importance to the tenant; it is also of advantage to the third party claimant. If the tenant may not interplead his landlord and another under the common law rule, the third party must establish his right to rent in a separate action. During the progress of this litigation the tenant would pay the rents to the landlord. It is entirely conceivable that before judgment was rendered the tenant might become insolvent, leaving the third party without recourse, or because of financial difficulties overtaking the landlord, the tenant would be required to pay his obligation twice.

Unquestionably the landlord may suffer some disadvantage in being forced to defend a suit in interpleader. While the litigation continues the rent is withheld from him without interest. But the tenant may not maintain such a suit upon the mere pretext or suspicion of double vexation; he must allege facts showing a reasonable probability of double vexation. Without accurately appraising the rationale of interpleader, by some decisions this court has mentioned as an additional requirement that the plaintiff must allege facts showing a doubt as to which claimant he can safely pay. This statement was made in the case of *Pfister* v. *Wade*, 56 Cal. 43, 51, and echoed by way of dictum in *Fidelity Sav. etc. Assn.* v. *Rodgers*, 180 Cal. 683, 685 [182 P. 426], and *Conner* v. *Bakersfield*, supra, p. 203. However, to demand from a plaintiff that he express a doubt as to which adverse claimant he is liable is an admission that the basis upon which the right to interpleader rests is the avoidance of double liability. "The right to the remedy by interpleader is founded, however, not on the consideration that a man may be subjected to double liability, but on the fact that he is threatened with double vexation in respect to one liability." (*Pfister* v. *Wade*, supra, p. 47; 14 Cal.Jur. 702; see, also, 33 C.J. 438; 30 Am.Jur. 215; 4 Pomeroy's Equity Jurisprudence [5th ed. 1941], § 1320.)

The complaint therefore states a cause of action against a general demurrer and denial of leave to amend was an abuse of discretion even if the special demurrer was well

taken. However, upon a reconsideration of the special demurrer the court may require the clarification of any uncertainties in the statement of the essential elements of the right to interplead. (*Washer* v. *Bank of America,* 21 Cal.2d 822 [136 P.2d 297].)

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., and Traynor, J., concurred. Schauer, J., did not participate.

CARTER, J.—I dissent.

I agree with respondents that the case falls within the common law rule, now embodied in Code of Civil Procedure, section 1962(4) and I do not agree that the provisions of section 386 of the Code of Civil Procedure as amended in 1881 have any such abrogative effect upon section 1962(4) as has just been held by the majority of this court.

I also disagree with the intimation contained in the majority opinion that it can be at all "questionable whether a tenant, by interpleading his landlord and another, directly and absolutely disputes the former's title." As will hereinafter be shown this statement is contrary and stands in opposition to all common law and modern authority. The tenant's very action in filing suit in such a situation, in the absence of any factors showing a derivative title from the lessor to the claimant, subsequent to commencement of the landlord-tenant relationship, is tantamount to an admission that such dispute dated back at least to the commencement of the landlord-tenant relationship.

The principle that a tenant is not permitted to deny the title of his landlord at the time of the commencement of the landlord-tenant relationship stems far back into the common law, and is undisputed therein. The basis for the rule is found in the inequity of allowing a tenant to secure possession of premises through a lease from the person then in possession, and afterwards, and while retaining and enjoying such possession, disputing the right of the lessor to make the lease, and depriving the latter of the benefits of his rent or other obligations incurred when due or owing. As stated in the annotation in L.R.A. 1916E at page 699:

. . . possession of land under a lease imposes upon the lessee and those claiming under him the duty of recognizing

the title of the lessor, in virtue of which he secured such possession; hence, so long as he continues in possession under his lease, he is estopped in any proceeding commenced by him against his lessor, to deny the latter's title as to defects therein or adverse claims outstanding at the time of the execution of the lease. In order to be entitled to question his landlord's title in these regards, he must first surrender possession of the premises. . . ."

A correlative provision of the law in this respect is found in Civil Code, section 1948 providing that "The attornment of a tenant to a stranger is void, unless it is made with the consent of the landlord, or in consequence of a judgment of a court of competent jurisdiction."

The initial question to be considered then, is whether or not a suit in which a tenant interpleads his landlord and one who claims the rent agreed to be paid in accordance with the terms of the lease by which he holds possession of the real property contravenes the foregoing conclusive presumption, that "A tenant is not permitted to deny the title of his landlord at the time of the commencement of the relation."

While the matter is one of first impression in California* it has been uniformly held in other jurisdictions where the question has·been raised, that a tenant by interpleading his landlord with a third person asserting an adverse title to the leased premises antecedent to the inception of the landlord-tenant relationship, thereby disputes his landlord's title and the action is not maintainable. (*Whitaker* v. *Whitaker*, 62 S.W. 664 (Ct. of Chancery Appeals of Tenn.; affirmed by Supreme Ct. of Tenn. without opinion, see 62 S.W. 673); *Standley* v. *Roberts*, 59 F. 836 [8 C.C.A. 305]; *Oil Run Petro Co.* v. *Gale*, 6 W.Va. 525; 97 A.L.R. 993; L.R.A. 1916E 699 30 Am.Jur. 216; 32 Am.Jur. 126; Pomeroy's Equity Jurisprudence (5th ed. 1941) vol. 4, §§ 1326, 1327.) If, however, the claims of the third person originate from some act of the lessor done or suffered after the commencement of the landlord-tenant relationship the action is maintainable, not solely

---

*McDevitt* v. *Sullivan*, 8 Cal. 592 (decided before enactment of Code Civ. Proc.) dicta; *Schluter* v. *Harvey*, 65 Cal. 158 [3 P. 659] and *Spangler* v. *Spangler*, 11 Cal.App. 321 [104 P. 995], claimants asserted interest stemmed from the lessor subsequent to the lease. *Warnock* v. *Harlow*, 96 Cal. 298 [31 P. 166, 31 Am.St.Rep. 209] the issue was not raised.

because of the presence of privity, as required at common law, but because then the tenant is not disputing his landlord's title as it existed at the commencement of the relation. (*Maulsby* v. *Scarborough,* 179 Md. 67. [16 A.2 897] ; *Lawrence* v. *Eller,* 169 N.C. 211 [85 S.E. 291, Ann.Cas. 1917D 546, L.R.A. 1916E 696] ; *Coutan* v. *Williams,* 9 Ves.Jr. (Eng.) 107; *Clark* v. *Byne,* 13 Ves.Jr. (Eng.) 386; 4 Pomeroy Equity Jurisprudence, § 1327.) Such is not this case.

Although the matter has not been directly adjudicated in California, yet the fact has been adverted to on occasions that a tenant or subtenant, cannot compel the landlord to litigate the right of some other to that possession for which the tenant has no claim. (*Commissioners of Yosemite* v. *Barnard,* 98 Cal. 199 [32 P. 982] ; *Vatuone* v. *Cannobio,* 4 Cal.App. 422 [88 P. 374].)

*Commissioners of Yosemite* v. *Barnard, supra,* was an action in unlawful detainer. Plaintiff prevailed. However, the trial court made a finding that there was an outstanding lease in a third person. The defendant upon appeal urged that the plaintiff not being entitled to possession, the judgment should be reversed. This court held that the finding was immaterial and said: ''The tenant, having received the possession by the permission of his landlord, cannot compel the landlord to litigate the right of some other to that possession for which the tenant has no claim. As between him and his landlord, his contract as lessee obligates him to surrender the possession at the expiration of his term, and he cannot set up an outstanding title, or show any title in himself which has not been mediately or immediately derived from his landlord.''

From what has been said it follows that we may justly disregard the mandate pertaining to the law of landlord and tenant found in section 1962(4) of the Code of Civil Procedure, only if the amendment to section 386 of the Code of Civil Procedure enacted in 1881 be taken to repeal section 1962(4) as far as interpleader actions are concerned.

Section 386 of the Code of Civil Procedure as here relevant provides as follows:

''And whenever conflicting claims are or may be made upon a person for or relating to personal property, or the

performance of an obligation, or any portion thereof, such persons may bring an action against the conflicting claimants to compel them to interplead and litigate their several claims among themselves. The order of substitution may be made and the action of interpleader may be maintained, and the applicant or plaintiff be discharged from liability to all or any of the conflicting claimants, although their titles or claims have not a common origin, or are not identical, but are adverse to and independent of one another.''

The reasons for the provisions in the concluding sentence of the foregoing code section that the claims of the interpleaders need not be of a common origin, nor identical, is easily seen when one refers to the rigid common law elements of a bill of interpleader, to wit: (1) The same thing, debt, or duty must be claimed by both or all the parties against whom the relief is demanded; (2) All of the adverse titles or claims must be dependent, or be derived from a common source; (3) The one seeking the relief must not have nor claim any interest in the subject matter; (4) He must have incurred no independent liability to either of the claimants. (4 Pomeroy's Equity Jurisprudence (5th ed. 1941) § 1322.)

As a result of the code provision (Code Civ. Proc., § 386), the first two requirements have been expressly abrogated in this state. (14 Cal.Jur. 702.) Such being the primary purpose, an intention on the part of the Legislature to go further, without expressly saying so, and thereby repeal such an ancient and universally recognized principle pertaining to the law of landlord and tenant as that expressed in section 1962(4) of the Code of Civil Procedure as a conclusive presumption is not to be readily implied. It is to be noted that the phraseology of section 386 permits interpleader when ''conflicting claims are or may be made upon a person for or relating to personal property, or the performance of an obligation. . . .'' If the Legislature intended the effect for which appellant contends, they would have included real property in that phraseology. Such wording is contained in the statutes of Indiana* and it has been held in that state, solely because of this wording that a tenant holding a lease

---

*''A defendant against whom an action is pending upon a contract, or for specific real or personal property, may, at any time before answer . . .'' (Acts 1881 (Spec. Sess.) ch. 38, § 25, p. 240. Burns Indiana Statutes 2-223 (1943).

may when an action is brought against him require interpleader of the other claimant. (*Hall* v. *Craig*, 125 Ind. 523, 525 [25 N.E. 538].)

As for the conclusion suggested in the majority opinion that ''as, notwithstanding the rule codified in section 1962(4), the common law permitted a tenant to interplead his landlord and a stranger in privity, when the Legislature abolished the requirement of privity in interpleader cases, it did away with the basis for the common law rule,'' the presence of privity was not the basis of the common law rule, but merely one circumstance where a tenant would not be violating the rule. This rule cannot be done away with except by express or implied repeal of the code section itself.

The conclusion herein reached that section 1962(4) of the Code of Civil Procedure was not intended to be and has not been impliedly modified by section 386 of the Code of Civil Procedure as amended in 1881 is further borne out by a consideration of the practical results that would ensue upon the allowance of such litigation at the instance of the tenant.

The landlord upon letting the tenant into possession is entitled to his rent according to the leasehold agreement. In the event of the failure of the tenant to make payment, the landlord can sue for same and the tenant cannot defend on the basis of title in a third person, or that the landlord had no right to make the lease. He must make payment to the lessor. (*Reynolds* v. *Lewis*, 59 Cal. 20.) If interpleader is allowed, the rent is paid into court and the landlord is deprived thereof until the termination of the litigation, and of the possible income therefrom entirely. Many of the property owners in this state, as was shown in the late depression are largely dependent upon the rent derived from their property to meet monthly trust deed and mortgage payments. Especially is this true today as to large scale war housing projects recently constructed throughout the state. Also taxes, insurance premiums and expenses for care and maintenance continue to fall due regardless of the legal entanglements that may envelop the income. With the owner's title so effectively clouded little help can be expected from financing institutions, and it is readily conceivable that this deprivation of income may easily in a short time result in loss of the owner's equity through foreclosure of encumbrances or execution sale upon a judgment suffered.

As stated by Judge Sanborn in the case of *Standley* v. *Roberts*, 59 F. 836, 842 [8 C.C.A. 305]:

". . . . It would be a monstrous proposition . . . that a tenant of an owner could take a second lease of the same premises from one claiming title to them, and then compel the real owner and the pretended owner to litigate, not only the title to the premises, but the validity of the leases the tenant himself had taken, before either lessor could recover his rent. If such a proposition could be sustained, any tenant might treat his landlord to as many lawsuits as he could obtain leases of his premises. . . ."

(See, also, *Dungey* v. *Angove*, 30 Eng.Rep. (Eng.) 644, 645.)

Furthermore, such an action started by an unscrupulous tenant could quite conceivably interfere with and delay the owner in obtaining redress by use of the remedy of unlawful detainer,* when the tenant holds over after the expiration of his term, or has failed to perform conditions and covenants in regard to upkeep of the property. (Code Civ. Proc., § 1161(1)(3).)

In my opinion it would be more consonant with considerations of justice and principles of equity jurisprudence to require a third person who asserts an adverse interest in real property antecedent to the inception of the landlord-tenant relationship, to obtain a preliminary injunction restraining the tenant from paying the rent to the landlord and requiring that it be impounded pending the litigation, or requiring the appointment of a receiver, in which events the person asserting the adverse interest would be required to put up a bond to protect the landlord in the event he ultimately prevailed in the action. In other words, the burden should be on the person who asserts an interest adverse to the landlord to convince the trial court on an application for a preliminary injunction that he has at least a prima facie case, and give the trial court an opportunity to protect the landlord against damage by requiring the person asserting such adverse claim to furnish an undertaking which will protect the landlord against loss or damage in the event he should ultimately

---

*Which action takes precedence on the court's calendar. Nor can a tenant who holds over after expiration of his term deny his landlord's title without first surrendering the premises. (*McKissick* v. *Ashby*, 98 Cal. 422 [33 P. 729].)

prevail. In such event all parties are protected and the landlord is not subjected to the perpetual threat that whenever a tenant becomes suspicious that his landlord's title may be questioned, he may bring an action in interpleader and require his landlord to resort to expensive and prolonged litigation before he may receive the rent which the tenant has by solemn written agreement promised to pay at stated periods. It is not difficult to visualize a situation where a tenant might resort to an action in interpleader without just or any cause in order to prevent the landlord from receiving the rent when due and thus cause the landlord financial embarrassment when no real or actual controversy exists as to the genuineness of the landlord's title. Such a situation should not be permitted to exist in view of the traditional policy of the common law which finds expression in our code section that "A tenant is not permitted to deny the title of his landlord at the time of the commencement of the relation." (Code Civ. Proc., § 1962(4).)

Although, according to the majority opinion, the complaint is uncertain as to just when the copartnership and copartners claimed to have derived title from the lessors, no contention has been made upon this appeal, that it is at all possible for plaintiffs to amend, so as to take the case out of the rule, and it being indicative to the contrary according to the briefs on file, the sustaining of the general demurrer to plaintiff's complaint should therefore be affirmed.