**BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, etc., Plaintiff,**

v.

**Socrates MAMAKOS et al., Defendants.**

**No. C–72–314.**

United States District Court, N. D. California.

Nov. 27, 1972.

William J. A. Weir, Charles E. Cooper, Theodore Sachsman, Legal Dept., San Francisco, Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty., John M. Youngquist, Chief, Tax Div., San Francisco, Cal., for defendants.

## MEMORANDUM OPINION

SCHNACKE, District Judge.

This action was originally commenced by the Bank of America as an action in interpleader in the Superior Court, Sonoma County, and was removed to this Court on the ground that the United States is a party defendant. 28 U.S.C. §§ 1441(a), 1335(a), 2410. It is before the Court on the Government's motion for summary judgment and plaintiff's motion that it be discharged and in that connection awarded its costs and attorneys' fees. From a practical standpoint, plaintiff's motion is in response and in opposition to the Government's motion for summary judgment.

The facts are undisputed, and the issues outstanding are entirely issues of law. The facts, as drawn from the allegations of the complaint and the various affidavits on file, are as follows:

A bank account was maintained in the Cloverdale, California, branch of plaintiff, in the joint names of a Mr. and Mrs. Weeks. Some time prior to the events here involved, the Weekses had deposited in the account a check in the amount of $13,500 drawn on a Florida bank. They had also drawn on the account a check in like amount payable to defendant Mamakos, representing certain attorney's fees due him; it can reasonably be inferred that the collection of the Florida check was essential to bring the balance in the account up to the amount payable to Mamakos. This being the case and the Florida check not having been collected, when Mamakos presented the check payable to him, the Bank returned it unpaid and advised him that the Weekses' account was insufficient to pay it. Subsequently, the Florida bank paid the Cloverdale branch the amount of the check drawn on it, thereby increasing the balance in the Weekses' account by that sum. At about this point, the Internal Revenue Service levied on the account of the Weekses on a claim of tax liability. The check payable to Mamakos remained outstanding, having been returned to him dishonored. The exact amount of the levy by the United States is unclear but it presumably equalled or exceeded the entire balance in the Cloverdale branch.

The Bank, alleging that it was uncertain as to whether to pay the $13,500 to Mamakos or to the United States, brought this action in interpleader. The United States removed the action to this Court on February 22, 1972. On March 1, 1972, Mamakos notified the Bank that he was asserting no claim against the account either on his own behalf or on behalf of his clients the Weekses. With this information at hand, the United States demanded of the Bank that the action be dismissed and offered to stipulate thereto.[1] The Bank countered with a demand that, prior to such dismissal, it be paid its costs and attorneys' fees incurred in the action. The United States refused to agree to this and the present motions resulted. The total fees and costs claimed by the Bank amount to $547.50, which is the sum before the Court.

---

1. No responsive pleading having been filed, the stipulation would not seem to be required, except perhaps as a waiver of costs. Federal Civil Rule 41(a)(1).

The cross-motions of the Bank and the United States came before the Court on November 10, 1972; the Court granted the Government's motion and denied that of the Bank, for the reasons stated below, which we deem it desirable to set forth in writing.

While a number of subsidiary issues are argued by the parties, it seems to the Court that the Government advances one overriding argument, that the Bank was clearly bound from the moment of the tax levy to turn over to it the sum levied upon, regardless of claims such as that of Mamakos, from which it follows either (a) that the Bank had no valid basis for instituting the interpleader, since its liability was clear as a matter of law with respect to the disposition of the fund or (b) that upon failure to pay over the sum the Bank, its officers, and others connected with it, became personally liable for the sum, together with a penalty of 50% and was not therefore in the position of a disinterested stakeholder as required for interpleader purposes.

█ As to the first of these questions, the Bank submitted the affidavit of one Barnett, operations officer of the Cloverdale branch, reciting the above sequence of events and stating "I was unable to determine to whom the money should be paid". This is, of course, entirely insufficient to establish that the Bank as a whole, including its extensive legal staff, mentioned in its affidavits on the question of allowability of attorneys' fees, was unable to determine entitlement to the funds without the filing of this action.

In this respect the United States relies, of course, on 26 U.S.C. § 6332. In subsection (a), the statute requires that, with an exception not here pertinent, a person in possession of property or rights to property upon which a levy has been made with respect to Federal taxes shall, upon demand of the proper officials of the United States, pay over such property or rights to the United States.

Subsection (c) provides that, upon failure or refusal to comply with the mandate of (a), the person shall be personally liable to the United States for the value of the property withheld, together with costs and interest, and, if such failure or refusal is without reasonable cause, a penalty of 50% of the preceding sum is imposed.

In exchange for the absolute liability imposed by subsection (a), the statute grants a concomitant defense against liability to third-party claimants. 26 U.S.C. § 6332(d) provides that any person paying over property or rights to the United States in response to a tax levy

"shall be discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment."

In the present case, therefore, if any claim were asserted against the Bank by Mamakos or anyone else, the Bank would have no liability. Hoye v. United States, 277 F.2d 116 (9th Cir., 1960).

The obligation of the Bank with respect to which of the claimants was entitled to the fund was perfectly clear and not subject to any reasonable doubt. A case strikingly in point is Francis I. duPont Co. v. O'Keefe, 365 F.2d 141 (7th Cir., 1966). There plaintiff held funds belonging to a deceased domiciliary of Germany. Alleging doubt as to whether to pay the sum to the duly appointed Public Administrator or to certain alleged heirs, plaintiff interpleaded them. The complaint was held to have been properly dismissed since there was no reasonable doubt of the Public Administrator's title and therefore no "real and reasonable fear of exposure to double liability or the vexation of conflicting claims." (p. 143).

It may be the problem posed by these Federal court decisions that causes the Bank to urge the applicability of California rather than Federal law, since the present action was originally commenced

in a California court. If it were necessary to decide the point, it seems clear that Federal law is controlling. Hoye v. United States, 277 F.2d 116 (9th Cir., 1960). We do not believe, as will be seen, that there is sufficient difference between California and Federal law to make it necessary to determine which we are dealing with.

The relevant California statute is Code of Civil Procedure, § 386.

■ On the issue of a requirement of good-faith doubt before commencing an interpleader action, there appears to be no real difference between state and Federal law. The leading California case on the whole subject of interpleader is Hancock Oil Co. v. Hopkins, 24 Cal.2d 497, 150 P.2d 463 (1944), which bears upon several of the points at issue, assuming that California law is applicable. In that case, the Court said at page 510, 150 P.2d at page 470:

"But the [plaintiff] may not maintain such a suit upon the mere pretext or suspicion of double vexation; he must allege facts showing a reasonable probability of double vexation."

In the present case the undisputed facts, together with the undisputed law, clearly show, despite any assertion by the Bank to the contrary, that it could not reasonably have been in doubt as to disposition of the funds and there was no "reasonable probability of double vexation." The only vexation that the Bank could have been subjected to with respect to this money would have been an action by Mamakos, as to which it is unquestionable that the Bank would be fully protected. Hoye v. United States, *supra*.

■ The question remains whether the Bank is entitled to attorneys' fees and costs. The answer should be obvious. It would be highly anomalous to grant such relief to an unsuccessful party, especially the plaintiff. Cf. Local Rule 124(a). Moreover, all liabilities of

the United States are necessarily governed by Federal law. Clearly in the event of a conflict between the Federal and state law, the Federal law would be applicable. It remains only to determine what the Federal law on this subject is. The United States relies first upon 26 U.S.C. § 6323, which relates generally to the validity and priority of Federal tax liens as against liens asserted by others. Plaintiff points out that it is not asserting any lien and therefore this section is not applicable. To the contrary, the Bank says, it utterly disavows any interest whatever in the fund—other than the right to attorneys' fees and costs being now considered.

Both sides rely upon United States v. Liverpool & London Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955). That case actually supports neither party. The principal holding was that in an action against a garnishee requiring resolution of conflicting claims of a garnisher and the United States as lienor proceeding under a tax lien, the United States had priority even though its lien was subsequent to the garnishment. While the Court adverted to a Texas rule pertaining to the liability of a garnishee in such an action for attorneys' fees, it construed that Rule so as to deny them to the garnishee and thus indulged in mere *dictum*, saying in effect that *even if* Texas law applied no attorneys' fees would be allowed.

The only other case cited by either party is United States v. State National Bank of Connecticut, 421 F.2d 519 (2nd Cir., 1970), which was a case virtually identical with the present case; it was originally commenced by the United States in the district court to reduce tax liens to judgment and foreclose the liens on certain bank accounts held by defendant bank. The defendant bank in effect interpleaded, although in the form of what amounted to a disclaimer and tender of the balance in the account into court, as in the *Liverpool* case. The

court below had allowed attorneys' fees to the bank out of the funds deposited. The Court of Appeals clearly and decisively states the basis of its reversal of this allowance:

> "We hold that a disinterested bank-stakeholder is not entitled to attorney's fees from a fund when the total amount in the fund is insufficient to satisfy prior federal tax liens." (Citing numerous cases, including the *Liverpool* case, *supra*.)

These cases establish the rule that in United States tax cases, at least, the attorneys' fees and costs are tied to the fund. If the Government gets the whole fund, the fundholder takes nothing from it for attorneys' fees and costs.

While the amount of the lien for taxes here is not expressly stated, it appears to be undisputed that it was in excess of the amount of the funds held by the Bank. Therefore, it necessarily follows under the rule just stated that the Bank here is not entitled to attorneys' fees. It should be noted that the Court of Appeals in the *Bank of Connecticut* case made no reference whatever to any provisions of Connecticut law and did not place any reliance or make any distinction based on the fact that the action was originally commenced in the district court and not in the state court. The Bank here does not mention the *Connecticut* case. On this analysis, since no attorneys' fees and costs are allowable in any case, neither the question of allowability of attorneys' fees to house counsel nor various other questions is presented, such as whether the Bank was a disinterested party entitled to file interpleader, in view of its statutory liability to the United States under 26 U.S.C. § 6332(c), *supra*.

The Court has therefore ordered that the United States's motion for summary judgment be granted and that the Bank's motion for discharge and allowance of attorneys' fees and costs be denied.